T.C. Memo. 2005-129


UNITED STATES TAX COURT


WILLIAM S. FAIREY, JR., AND SUSAN R. FAIREY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 5680-03.                    Filed May 31, 2005.


William S. Fairey, Jr., and Susan R. Fairey, pro se.

<u>Michael D. Zima</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


COLVIN, <u>Judge</u>:  Respondent determined deficiencies in

petitioners' Federal income tax and penalties as follows:

|       |            |          | Penalties |
| Year  | Deficiency | Sec. 6662 | Sec. 6663 |
|-------|------------|----------|-----------|
| 1999  | $3,456     | $691.20  | --        |
| 2000  | 46,341     | 4,094.60 | [1]$19,401 |
| 2001  | 3,566      | 713.15   | --        |

[1] Respondent determined that petitioner William S. Fairey, Jr., is
liable for the penalty for fraud with respect to part of the underpayment and
that both petitioners are liable for the negligence penalty with respect to
the remainder of the underpayment.

Following concessions, the issues for decision are:

1.  Whether the statute of limitations bars assessment and collection of petitioners' tax for 1999.  We hold that it does not.

2.  Whether petitioners bear the burden of proof relating to issues other than fraud.  We hold that they do.

3.  Whether petitioners had a greater amount of (a) expenses for William S. Fairey, Jr.'s (petitioner) consulting activity, (b) unreimbursed employee business expenses, or (c) itemized deductions than respondent allowed.  We hold that they did not.

4.  Whether petitioner is liable for the fraud penalty under section 6663 for 2000.  We hold that he is with respect to the deficiency caused by the fact that he (a) deducted a purported $7,500 payment three times on petitioners' 2000 tax return which they never paid; and (b) deducted $54,000 of loan repayments as legal and professional fees.

5.  Whether petitioners are liable for the accuracy-related penalty under section 6662(a).  We hold that they are to the extent discussed below and as reduced by respondent's concessions.[1]

_____

[1]  Respondent conceded that petitioners may deduct $92.49 paid to Media Week and $5,500 paid to Nelson Hesse in 1999, and an Internet expense of $256.81.

Unless otherwise stated, section references are to the Internal Revenue Code. Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Petitioners are married and resided in Sarasota, Florida, in 1999, 2000, and 2001, and when they filed the petition in this case.

A. Petitioner

1. Petitioner's Employment With TruGreen Lawn Care

Petitioner has a bachelor's degree in psychology and 45 credit hours toward a master's degree in biology. Petitioner was director of human resources and marketing for TruGreen Lawn Care (TruGreen) in 1998 and early in 1999 until TruGreen discharged him. Petitioner sued TruGreen for wrongful discharge and received a settlement in 2000 of $100,000 plus payment of $16,500 in legal expenses petitioner incurred in that case. The law firm of Nelson Hesse represented petitioner in that lawsuit.

2. Petitioner's Consulting Activity and Volunteer Work

After being discharged by TruGreen, petitioner offered consulting services to clients relating to marketing, media, and public relations in 1999-2001. Petitioner's consulting activity was a sole proprietorship.

Double Otter, Inc. (Double Otter), was the only client that paid petitioner for services during the years in issue. Petitioner obtained national television, print, and Internet publicity for Double Otter. Double Otter paid petitioner $9,000 on December 6, 1999, and $27,000 in 2000.

Petitioner did volunteer work for the Presidential election campaign of Vice President Gore from August through December 2000. Petitioner hoped to be appointed to Government service if the campaign was successful. After the election, petitioner resumed his consulting activity.

### 3. Petitioner's Loans From William H. Davoli and Dana Pekas

William H. Davoli (Davoli) is married to petitioner's sister. Petitioner borrowed $27,000 from Davoli in 2000. Petitioner repaid $27,000 to Davoli on October 19, 2000. Dana Pekas (Pekas) made two loans to petitioner in 2000. The record does not show the amount of the first loan. The second loan was for $25,000. Petitioner repaid $27,000 to Pekas in 2000.

### 4. Special Friends Golf Tournament

Petitioner traveled to Council Bluffs, Iowa, in the fall of 2000 and 2001 to do volunteer work for Zaring Cioffi Entertainment at the Special Friends Celebration (Special Friends) golf tournament. He hoped his volunteer work would lead to employment. Special Friends raises money for breast cancer research and is tax exempt under section 501(c)(3).

Fred Colanino (Colanino) is the founder and executive director of Special Friends. Petitioner donated a set of golf clubs worth $900 to Special Friends in 2000. Special Friends sent petitioner a letter acknowledging his donation of the golf clubs. Tom Brune (Brune), the treasurer of Special Friends, signed the letter.

Petitioner made no contributions by cash, credit card, or check to Special Friends in 2000. Special Friends never accepted contributions made through Visa credit cards.

B.    Susan Fairey's Employment and Employee Expenses

Susan Fairey had been a kindergarten and first grade teacher for 24 years as of the date of trial. The Sarasota County School System hired her in August 1998 to serve as a first grade teacher at Philippi Shores Elementary School. Susan Fairey taught at Phillippi Shores Elementary School during 1999, 2000, and 2001.

Using a rented truck, Susan Fairey delivered a load of materials to her classroom in August 1998, including two filing cabinets, a table and chairs, children's tables, easels, two large book stands, and room decorations.

During each of the years in issue, Susan Fairey received $250 from her school, $100 from the State of Florida, and $50 from her Parent Teacher Association to buy items for her classroom. Susan Fairey received no other reimbursements in those years for her employment-related expenses.

Susan Fairey bought items for her classroom during the years in issue from stores such as Target, Wal-Mart, K-Mart, Publix, and Albertsons. The record does not show the costs of those items. Petitioners paid the following amounts in 1999 to buy items for personal use, Susan Fairey's classroom, and petitioner's business activities (the amounts for each are not specified in the record):

| Seller | 1999 | 2000 |
| --- | --- | --- |
| Target | $945.51 | $629.28 |
| Wal-Mart | 673.23 | 558.44 |
| Phar-Mor | 457.74 | 124.31 |
| Sam's Wholesale Club | 451.54 | 90.12 |
| Toys By Nature | 337.02 | 203.26 |
| Office Depot | 236.06 | 63.91 |
| Everything Educational | 127.19 | 288.31 |
| Scholastic Books | 58.40 | 77.80 |
| Learning Depot | 30.97 | 19.68 |
| Albertson's | 327.39 | -- |
| Publix | 49.86 | -- |
| Walgreen's | -- | 100.26 |
| K-Mart | -- | 70.77 |

Austin Fairey, petitioners' daughter, attended Phillippi Shores Elementary School during the years in issue. Susan Fairey bought various educational materials for Austin during those years.

C.  Petitioners' Income Tax Returns

Petitioner prepared petitioners' income tax returns from 1988 through 2001 using computer spreadsheet and tax preparation software. Petitioner classified their checks into categories such as business expenses, employee business expenses, and

itemized deductions and entered amounts into the spreadsheet software. He entered the totals from the spreadsheet software for each category into the tax return preparation software.

Petitioners included a Schedule C, Profit or Loss From Business, for petitioner's consulting activity with their income tax returns for 1999, 2000, and 2001. Petitioners reported that petitioner had business expenses of $19,700 in 1999, $123,908 in 2000, and $13,532 in 2001 which resulted in losses of $10,600 in 1999, $96,642 in 2000, and $11,028 in 2001.

Petitioners deducted $5,500 that petitioners paid to Nelson Hesse on February 8 and April 16, 1999, on their 1999 income tax return in two places: On the Schedule C as a legal or professional expense; and on the Schedule A, Itemized Deductions, as a miscellaneous itemized deduction for attorney's and accountant's fees.

Petitioners deducted their $900 charitable contribution twice on their 2000 income tax return: As a contribution of property; and as a contribution of cash.

Petitioners deducted $7,500, which they claim to have paid to Special Friends in 2000 (but which they never paid), in three places on their 2000 return: On the Schedule A as an itemized charitable deduction; and on the Schedule C as an advertising expense and as an office expense.

On their 2000 tax return, petitioners deducted $16,500 (which they never paid) for legal expenses twice: As a Schedule C legal or professional expense; and as a miscellaneous itemized deduction for attorney's fees.

Petitioners deducted loan repayments of $27,000 to Davoli and $27,000 to Pekas in 2000 as legal and professional expenses on the Schedule C for petitioner's consulting activity.

Petitioners deducted the $2,535 cost of a computer on their 2000 income tax return twice: As a depreciation expense; and as an office expense.

D.   Respondent's Examination and Determination

1.   Examination of Petitioners' 1999 Tax Return

On July 13, 2001, respondent's revenue agent Joan Hughs (Hughs) sent a letter to petitioners in which she invited them to a conference as part of the audit of their 1999 income tax return and requested copies of all Forms W-2 they had received, records of the Schedule C gross receipts, a brief history of the Schedule C business, statements from their employers of their reimbursement policies, records of all of their employee business expenses, legal and professional expenses, office expenses, supplies expenses, other expenses, repair receipts, appointment books, and records of travel, meal, and entertainment expenses.

Petitioner showed some of those documents to Hughs at a meeting on August 24, 2001. However, he did not provide a history of the Schedule C business or statements of employee reimbursement policies from the employers. Immediately after that meeting, Hughs asked petitioners to provide documentation of their employee business expenses, depreciation, travel expenses, and telephone expenses not later than October 1, 2001.

2. Examination of Petitioners' 2000 Tax Return

Hughs informed petitioners that their 2000 income tax return was being audited relating to miscellaneous itemized deductions, cash contributions, and Schedule C expenses. Hughs received a letter on October 9, 2001, stating that petitioner did not know when he would be available for a meeting and informing Hughs that he would wait to have his 2000 income tax return audited. Petitioners did not provide Hughs with any of the documents she had requested. Petitioner and Hughs rescheduled the second meeting for November 26, 2001. Petitioner called Hughs to reschedule the November 26 meeting for December 13, 2001. Petitioner later called Hughs to reschedule the December 13 meeting for January 10, 2002. Hughs agreed. Neither petitioner met with Hughs on January 10, 2002.

Hughs met with petitioner on February 8, 2002. Hughs issued another request for documents to petitioners dated February 21, 2002, seeking substantiation of various expenses and an

explanation of the purpose of petitioner's payment of $27,000 to Pekas. Petitioner sent a letter, received by Hughs on April 1, 2002, in which he asked her to answer 28 questions, including whether she had proof that all administrative steps required by the Internal Revenue Code had been followed, whether statutory authority for the audit existed, which Internal Revenue Code section allowed her to solicit information, whether she could explain the relevance of the material she sought, and whether compliance with the audit was voluntary or mandatory.

On April 2, 2002, Hughs requested additional documents from petitioners concerning their deduction of legal, travel and employee business expenses and job search costs for 1999 and 2000. Petitioner postponed a meeting that Hughs had scheduled.

On April 30, 2002, petitioner asked that the audit of petitioners' 2000 income tax return be reassigned to someone other than Hughs because petitioners believed that Hughs had lost her objectivity.

3. Examination of Petitioners' 2001 Tax Return

Hughs sent a letter dated June 4, 2002, to petitioners and a second letter to Susan Fairey concerning the audit of petitioners' 2001 income tax return. In those letters, Hughs requested records of petitioner's Schedule C income and expenses, and petitioners' employee business expenses and itemized deductions. Hughs sent copies of a letter to each petitioner

inviting them to attend a meeting on June 24, 2002.  Petitioners did not receive those letters because they were out of town.

Neither petitioner met with Hughs on June 24, 2002. Petitioners never submitted any documents to Hughs relating to 2001.

4.    Petitioners' Conduct During the Examination

Susan Fairey did not meet with Hughs at any time during the audit of petitioners' 1999, 2000, and 2001 tax returns.

Petitioners did not submit monthly bank statements to Hughs. Hughs obtained those records through a summons.  Petitioners never gave Hughs a history of petitioner's Schedule C activity, receipts for petitioners' claimed employee business expenses, or receipts for or explanations of the purposes of the travel, meal, and entertainment expenses, or the other expenses deducted on their 1999, 2000, or 2001 income tax return.

Petitioner gave Hughs a copy of a spreadsheet which shows check No. 4089 from petitioner to Davoli as substantiation of claimed legal and other professional expenses incurred in 2000. Petitioners did not give Hughs any other substantiation of their legal expenses or the dimensions of their home (relating to their claimed home office deduction) as Hughs had requested.

Petitioner told Hughs during the audit that petitioners had paid $7,500 to Special Friends in 2000.  Petitioner gave Hughs a copy of a letter purportedly from Special Friends which he said

supported his charitable contribution deduction of $7,500 in 2000. That letter purportedly from Special Friends thanked petitioner for his donation of golf clubs and for an advertisement placed with the organization's newsletter and said that the bill for the advertisement would be charged to petitioner's Visa credit card in two installments of $3,750.

That letter was not an accurate copy of any letter from Special Friends. The letter that Special Friends sent to petitioner acknowledged his donation of golf clubs but did not mention any other contribution from petitioner. Petitioners did not contribute $7,500 to Special Friends in 2000 or provide to Hughs any record of Visa card payments to Special Friends.

During the audit, petitioner gave Hughs inconsistent and incorrect explanations of the purpose of the $27,000 payment to Pekas in 2000. He told Hughs that he paid $27,000 to Pekas in 2000 for investment counseling. Petitioner also told Hughs during the audit that he paid $27,000 to Davoli in 2000 to obtain a background investigation so he could qualify for appointed Government service. Petitioner told Hughs at a different time during the audit that the $27,000 payments were for legal fees.

Respondent issued the notice of deficiency to petitioners for 1999, 2000, and 2001 on January 16, 2003.

OPINION

A.   Whether the Statute of Limitations Bars Assessment and
     Collection of Petitioners' Tax for 1999

Petitioners contend that the statute of limitations bars

assessment and collection of their tax for 1999 because

respondent issued the notice of deficiency on January 16, 2003.

We disagree.

Petitioners timely filed their 1999 return on or before

April 15, 2000.  Generally, the Commissioner must assess tax

within 3 years after the due date of a timely filed return, sec.

6501(a) and (b)(1); i.e., in this case, on or before April 15,

2003.  Respondent timely issued the notice of deficiency on

January 16, 2003.  The statute of limitations does not bar

assessment and collection of petitioners' tax for 1999.

B.   Whether Petitioners or Respondent Bears the Burden of Proof
     for Issues Other Than Fraud

Respondent bears the burden of proving that petitioner is

liable for fraud.  See sec. 7454(a); Rule 142(b).  Petitioners

contend that respondent bears the burden of proof under section

7491(a) for all other issues as well.  We disagree.

The burden of proof with respect to a factual issue shifts

from the taxpayer to the Commissioner if, in addition to meeting

other requirements, the taxpayer has:  (1) Complied with

substantiation requirements under the Internal Revenue Code, sec.

7491(a)(2)(A); (2) maintained all records required by the

Internal Revenue Code, sec. 7491(a)(2)(B); and (3) cooperated with reasonable requests by the Secretary for information, documents, and meetings, id. Taxpayers bear the burden of proving that these requirements are met. See H. Conf. Rept. 105-599, at 239 (1998), 1998-3 C.B. 747, 993; S. Rept. 105-174, at 45 (1998), 1998-3 C.B. 537, 581. Petitioners failed to produce, and thus we infer that they failed to keep, records substantiating their deductions. Petitioners did not cooperate with Hughs's document requests or produce records during the audit.

Petitioners contend that they submitted their bank statements to Hughs. We disagree. Hughs obtained those records through a summons.

Petitioners contend that they did not meet with Hughs on January 10, 2002, because they did not know about the meeting. We disagree. Petitioner scheduled that meeting.

Petitioners understandably did not meet with Hughs on June 24, 2002, because they did not receive the letters attempting to schedule that meeting that Hughs sent them on June 4, 2002. The fact that petitioners had a good reason for missing the June 24 meeting does not outweigh their overall pattern of noncooperation. Petitioners contend that Hughs did not cooperate with them during the audit. That allegation is unconvincing.

We conclude that the burden of proof does not shift to respondent under section 7491(a). Thus, petitioners bear the

burden of proof except with respect to the fraud penalty. See

Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

C.  Whether Petitioners May Deduct More for Schedule C Expenses
    Than Respondent Allowed

    1.  Advertising Expenses

Petitioners deducted advertising expenses of $575 for 1999

and $7,500 for 2000 on the Schedules C for petitioner's

consulting activity.  Petitioner testified that the cost of

printing his business cards is deductible as an advertising

expense.  However, petitioners did not show how much petitioner

had paid to have business cards printed.  Petitioners' $7,500

advertising expense deduction for 2000 is based on their claim

(which we have rejected) that petitioner paid that amount to

Special Friends.  We conclude that petitioners may not deduct any

amount for advertising expenses for 1999 or 2000.

    2.  Legal and Professional Expenses

Petitioners deducted legal and professional expenses of

$5,500 for 1999, $59,727 for 2000, and $2,000 for 2001 on the

Schedules C for petitioner's consulting activity.  Petitioner

paid $5,500 to the Nelson Hesse law firm for representing him in

his lawsuit against TruGreen.  That payment was not related to

petitioner's consulting activity.[2]

---

[2]  Respondent conceded that petitioners may deduct the
$5,500 payment to the Nelson Hesse law firm as an itemized
deduction for 1999.

Petitioners contend that, for 2000, they may deduct $16,500 for legal fees paid by TruGreen to Nelson Hesse, $54,000 for loan repayments to Davoli and Pekas, $250 to Richard Weldon, and $221.45 to an unidentified person.  We disagree.  Petitioners may not deduct as a business expense TruGreen's payment of $16,500 to Nelson Hesse or $54,000 of loans repaid to Davoli and Pekas.

Petitioners did not show that they paid the $250 or the $221.45 or that those amounts were business expenses.  We conclude that petitioners may not deduct any amounts for legal and professional expenses for the years in issue.

### 3.  Supplies Expenses

Petitioners claimed deductions for supplies expenses of $2,856 for 1999, $4,962 for 2000, and $729 for 2001 on the Schedules C for petitioner's consulting activity.  Petitioners contend that he paid $2,535 in 1999 to buy a computer.  Petitioner was billed $2,535 for that computer.  However, there is no evidence than petitioners paid that amount or to what extent he used it for his consulting activity.

Respondent conceded that petitioners may deduct $92.49 in 1999 for a subscription to Media Week magazine.

Petitioners offered no evidence substantiating their deductions for supplies for 2000 or 2001.  We conclude that petitioners may not deduct more for supplies expenses than respondent allowed.

4.  Office Expenses

Petitioners deducted office expenses of $3,091 for 1999 and $15,109 for 2000 on the Schedules C for petitioner's consulting activity.  Of the $3,091 claimed for 1999, petitioner testified he may deduct $1,037.16 that he paid to the local cable television company as an office expense because he watched advertisements on cable television to evaluate whether his clients could effectively use that medium to advertise. Petitioner conceded that he and his family watched cable television for personal pleasure.

Petitioners contend that they may deduct $2,054 in 1999 for the purchase of a second computer in addition to the one mentioned above.  There is no documentary evidence showing how much petitioners paid for the second computer.

Petitioners contend that they may deduct $15,109 for 2000 consisting of payments for cable television, $7,500 allegedly paid to Special Friends, and other unspecified expenses.  We disagree.  Petitioners have not shown that they paid these amounts or that these amounts were for office expenses related to petitioner's consulting activity.  We conclude that petitioners may not deduct any office expenses for the years in issue.

5.  Travel, Meals, and Entertainment Expenses

Petitioners deducted expenses for travel of $2,196 for 1999, $9,823 for 2000, and $2,500 for 2001 on the Schedules C for

petitioner's consulting activity. They also deducted expenses for meals and entertainment of $457 for 1999, $1,780 for 2000, and $575 for 2001.

No deduction is allowed for expenses for travel, meals, entertainment, or lodging unless the taxpayer substantiates by adequate records or sufficient evidence corroborating the taxpayer's own statement, the amount, time and place, and business purpose of the expense. Sec. 274(d). Petitioners offered no evidence showing how much they spent for petitioner's consulting activity.

Hughs asked petitioners to provide documentation for petitioner's travel, entertainment, meals, and lodging expenses. Petitioners did not give that documentation to respondent or offer it as evidence. We infer that petitioner did not keep a contemporaneous log of those expenses. We conclude that petitioners may not deduct expenses for travel, meals, or entertainment for the years in issue because they have not met the substantiation requirements of section 274(d).

6. Utility Expenses

Petitioners deducted electricity expenses of $949 for 1999 and $444 for 2000 for their residence on the Schedules C for petitioner's consulting activity. Petitioners did not offer any evidence showing that petitioner used any part of their home

exclusively for his consulting activity as required to deduct home office expenses under section 280A(c).

Petitioners contend that Hughs never asked them for the dimensions of their home or of the space in their home petitioner used for business. We disagree. Hughs did so in a letter to petitioners dated July 13, 2001. We conclude that petitioners may not deduct any amount for utility expenses for the years in issue.

7. Car and Truck Expenses

Petitioners deducted car and truck expenses of $3,910 for 2000 and $4,209 for 2001 on the Schedules C for petitioner's consulting activity. The only evidence on this issue is petitioner's testimony that he visited stores that he thought might carry Double Otter's products. We conclude that petitioners may not deduct any car or truck expenses for the years in issue.

8. Depreciation

Petitioners deducted depreciation of $11,898 for 2000 on the Schedule C for petitioner's consulting activity on the basis of his claimed purchase of (a) a computer for $3,999, and (b) an Internet service for $7,899. There is no evidence that petitioner paid or is entitled to deduct these amounts. We conclude that petitioners may not deduct depreciation for 2000.

9.  Other Expenses

Petitioners deducted miscellaneous expenses of $4,240 for 1999, $3,431 for 2000, and $3,360 for 2001 on the Schedules C for petitioner's consulting activity.  These amounts include payment for telephone service.  Respondent concedes that petitioners paid $3,101.61 for telephone service in 1999 but contends that petitioners may not deduct any of this amount.  We agree because petitioners provided no basis to allocate between business and personal telephone use.  See sec. 262(b) (charge for basic telephone service to a residence is deemed personal).  Petitioners contend that they may deduct payments for computer printing supplies.  We disagree because there is no evidence showing how much petitioners paid for computer printing supplies.

Respondent concedes that petitioners paid and may deduct $285.35 for Internet service in 2000.

Petitioners deducted for 2000 insurance expense of $955, rent or lease payments of $3,720, and repairs and maintenance of $1,256.  Respondent contends that petitioners may not deduct any of these amounts.  We agree because there is no evidence substantiating these deductions.

We conclude that petitioners may not deduct more miscellaneous expenses on the Schedules C than allowed by respondent.

10. Conclusion

We conclude that petitioners may not deduct more Schedule C expenses for petitioner's consulting activity for the years in issue than allowed by respondent.[3]

D. Whether Petitioners Are Entitled to More Itemized Deductions Than Respondent Allowed

1. Susan Fairey's Employee Business Expense Deductions

Petitioners contend that they may deduct unreimbursed employee business expenses of $2,277.90 for 1999, $2,686.49 for 2000, and $965.37 for 2001 for Susan Fairey.[4] Petitioners contend that it is reasonable for them to deduct those amounts because they equal 28 percent of petitioners' total expenditures for 1999, 30 percent for 2000, and 16 percent for 2001.[5] We disagree. Petitioners have not given any convincing justification for basing their deductions on these percentages.

Hughs asked petitioners how much Susan Fairey spent for her classroom. Petitioners did not timely produce any records except some canceled checks payable to retailers that sell items that

---

[3] In light of this conclusion, we need not decide whether petitioner operated his consulting activity for profit.

[4] Teachers may deduct up to $250 for unreimbursed education expenses as above-the-line deductions for tax years beginning in 2002 or 2003. Sec. 62(a)(2)(D). For the years in issue, those expenses were deductible only to the extent unreimbursed employee business expenses and other itemized deductions exceeded 2 percent of adjusted gross income.

[5] The total of petitioners' business expenditures for 2001 is not in evidence.

could be for personal use.  Petitioners have not shown how much of the payments to those stores was for school supplies.[6]

If the taxpayer establishes that he or she paid a deductible expense but cannot substantiate the precise amount, we may estimate the amount of a deductible expense, bearing heavily on the taxpayer whose inexactitude is of his or her own making. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930).  The 10 checks that were admitted in evidence, bank statements, and other evidence do not show how much Susan Fairey paid for items for her classroom, and she did not testify as to the amounts of those expenses.  Susan Fairey received $400 during each year in issue to buy school supplies.  We have no basis to estimate how much she spent each year in excess of $400.

Petitioners contend that respondent had copies of all of petitioners' checks and bank statements nearly 2 years before trial and that Hughs and respondent's counsel, Michael Zima (Zima), made conflicting statements about those records.  We

_____

[6] On the morning of trial, petitioners for the first time gave respondent copies of additional canceled checks for the years in issue and what petitioner said was a summary of those checks.  The checks and the summary were not admitted in evidence because petitioners did not provide them to respondent 14 days before the first day of the trial calendar as ordered by the Court in granting respondent's motion to compel production of documents and as required by the standing pretrial order.  See Rules 104(c)(2), 131(b).  Admission into evidence of the checks would not affect the result on this issue, however, because the checks do not show whether the expenditures related to Susan Fairey's classroom.

disagree. Neither Hughs nor Zima had copies of all of petitioners' checks and bank statements at any time. Zima saw about 15 checks which he included in the stipulation of facts. Hughs saw 30 to 40 checks, but petitioner did not allow her to copy or keep them. Those statements do not conflict.

We conclude that petitioners may not deduct any unreimbursed employee business expenses for Susan Fairey for the years in issue.

2. Petitioner's Deductions for Employee Business Expenses

Petitioners contend that petitioner may deduct unreimbursed employee business expenses for 1999. We disagree. Although petitioner was an employee of TruGreen for a short time in 1999, there is no evidence that he had any unreimbursed employee business expenses in 1999.

3. Charitable Contribution Deductions and Other Itemized Deductions

Petitioners have not shown that they are entitled to more charitable contribution deductions or other itemized deductions than respondent allowed.

E. Whether Petitioner Is Liable for the Fraud Penalty for 2000

1. Contentions of the Parties and Background

Respondent contends that petitioner is liable for the fraud penalty under section 6663 for 2000 because petitioner fraudulently deducted (a) $7,500, which he never paid, in three places on the 2000 return, and (b) $59,727 for legal and

professional fees which were loan repayments to Davoli and Pekas.[7]

Respondent has the burden of proving fraud by clear and convincing evidence.  See sec. 7454(a); Rule 142(b).  Respondent must establish that:  (a) Petitioner underpaid tax for 2000, and (b) some part of the underpayment is due to fraud.  See sec. 6653(b).  If respondent shows that any part of an underpayment is due to fraud, the entire underpayment is treated as due to fraud unless the taxpayer shows by a preponderance of the evidence that part of the underpayment is not due to fraud.  See sec. 6663(b).

Fraud is the intentional evasion of a tax believed to be owing.  Webb v. Commissioner, 394 F.2d 366, 377 (5th Cir. 1968), affg. T.C. Memo. 1966-81.  Fraud is never presumed; it must be established by affirmative evidence.  Beaver v. Commissioner, 55 T.C. 85, 92 (1970).

### 2.  Badges of Fraud

Courts have developed several objective indicators, or "badges", of fraud.  Recklitis v. Commissioner, 91 T.C. 874, 910 (1988).  The following badges of fraud are present in this case as to petitioner for 2000:  (a) Creating a false document; (b) deducting the same item several times; (c) giving implausible or inconsistent explanations to respondent's examiner and in court

---

[7]  We discuss respondent's other contentions relating to fraud at par. E-3, below.

about events during the years in issue; (d) failure to cooperate with tax authorities; and (e) having false or inadequate books and records.

    a.   Creating a False Document

Submitting an altered document to the Commissioner's agents to obtain tax benefits is a badge of fraud. Powell v. Granquist, 252 F.2d 56, 59 (9th Cir. 1958); Bagby v. Commissioner, 102 T.C. 596, 608-609 (1994); see Spies v. United States, 317 U.S. 492, 499 (1943); Stephenson v. Commissioner, 79 T.C. 995, 1007 (1982), affd. 748 F.2d 331 (6th Cir. 1984). Each party accuses the other of altering the letter from Special Friends and testifying falsely about it.

We decide whether a witness is credible on the basis of objective facts, the reasonableness of the testimony, and the demeanor and consistency of statements made by the witness. Quock Ting v. United States, 140 U.S. 417, 420-421 (1891); Wood v. Commissioner, 338 F.2d 602, 605 (9th Cir. 1964), affg. 41 T.C. 593 (1964); Pinder v. United States, 330 F.2d 119, 124-125 (5th Cir. 1964); Concord Consumers Hous. Coop. v. Commissioner, 89 T.C. 105, 124 n.21 (1987).

Petitioner testified and contends that he received a letter from Special Friends that acknowledged his purchase of an advertisement for $7,500. We disagree. First, petitioner's testimony was contradicted by the credible testimony of Colanino

and a letter from Brune to Hughs saying that the letter from Special Friends to petitioner referred only to the golf clubs and that Special Friends did not accept Visa payments. Colanino reviewed the files of Special Friends and found no record that petitioner had contributed anything to Special Friends other than golf clubs. Second, the program in which petitioner purportedly bought an advertisement did not include an advertisement relating to him or acknowledge his purported contribution.

Petitioners contend that respondent should have called Brune to testify instead of Colanino. We disagree. Respondent reasonably called Colanino because he was the founder and executive director of Special Friends.

Petitioners contend that Colanino is not credible because he received compensation from Special Friends. We disagree. The fact that Special Friends paid annual compensation to Colanino does not detract from his credibility.

Petitioners seek to discredit a letter from Omaha State Bank stating that Special Friends did not accept credit card payments. They contend that the letter is not credible because Colanino did not authenticate it. We disagree. Colanino testified that Special Friends had an account with Omaha State Bank and that Special Friends never used credit cards. Petitioners also contend that Omaha State Bank was not the bank for Special Friends because it was not mentioned in the Special Friends golf

tournament program for 2000.  We disagree.  Whether Omaha State Bank was mentioned in the Special Friends event program is not relevant to whether Special Friends could process credit card payments.

Petitioners contend that Hughs admitted that the letter that she received from Special Friends was a forgery.  We disagree. Hughs did not admit that the letter she received from Special Friends was forged.

These circumstances leave us no alternative but to conclude that petitioner altered (or caused to be altered) the letter from Special Friends by adding a paragraph stating that he had purchased an advertisement in the program for $7,500 payable with two charges to his Visa card, and misrepresented that the altered letter was a correct copy.

b.    Deducting the Same Item Several Times

Claiming deductions for the same item more than once on the same return may be a badge of fraud.  See Edwards v. Commissioner, T.C. Memo. 1995-77.

Petitioners contend:  (1) That they did not deduct the same item in several places on their 2000 return; (2) if they did, they did so because of errors in their tax preparation software; and (3) it is not a badge of fraud to deduct the same item two or more times.  We disagree.

Petitioners deducted $7,500 on Schedule A as a charitable contribution and on Schedule C as an advertising expense and as an office expense.  Petitioner testified that he merely entered data in response to questions posed by the software.  We believe that petitioner fraudulently entered the $7,500 amount three times.  He had not paid the $7,500 at all and thus should not have entered the $7,500 amount even once.

We are not finding fraud merely because petitioner deducted the $7,500 three times; it is also significant that petitioner never paid the $7,500.

### c.    Giving Implausible or Inconsistent Explanations

Implausible or inconsistent explanations of behavior by a taxpayer can show that the taxpayer had fraudulent intent. Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Korecky v. Commissioner, 781 F.2d 1566, 1568 (11th Cir. 1986), affg. T.C. Memo. 1985-63; Bahoric v. Commissioner, 363 F.2d 151, 153 (9th Cir. 1966), affg. T.C. Memo. 1963-333; Grosshandler v. Commissioner, 75 T.C. 1, 20 (1980). Petitioner's explanations of his alleged payment of $7,500 and $54,000 for legal and professional expenses were implausible and inconsistent with his actions.  Deducting his payments to Pekas and Davoli as legal and professional fees is inconsistent with petitioner's testimony that the payments were loan repayments. Petitioner's testimony that the computer software is to blame for

multiple deductions of the same amounts is inconsistent with his spreadsheets, which show that he entered the same amounts more than once on his spreadsheets.

d.    Failure To Cooperate With Tax Authorities

A taxpayer's failure to cooperate with the Commissioner's examining agents is a badge of fraud.  Bradford v. Commissioner, supra.  Petitioners did not meet with Hughs as she requested or provide the substantiation she requested.  We conclude that petitioners did not cooperate with Hughs.

e.    Having False or Inadequate Books and Records

A taxpayer's failure to maintain accurate records or concealment of records may be a badge of fraud.  Id. at 308; Merritt v. Commissioner, 301 F.2d 484, 487 (5th Cir. 1962), affg. T.C. Memo. 1959-172; Reaves v. Commissioner, 295 F.2d 336, 338 (5th Cir. 1961), affg. 31 T.C. 690 (1958); Grosshandler v. Commissioner, supra.  As discussed above, petitioners failed to produce, and thus we infer that they failed to keep, records substantiating their deductions.

3.    Whether Petitioner's Deduction of $16,500 TruGreen Paid to Nelson Hesse or $471.45 Paid to an Individual Not Otherwise Identified in the Record Was Fraudulent

Respondent contends that petitioner's deductions for 2000 of $16,500 paid to Nelson Hesse for legal and professional services and $471.45 paid to an individual not otherwise identified in the record were fraudulent for the same reasons that his deductions

of $7,500 that he claimed to have paid to Special Friends and $54,000 that he paid to Davoli and Pekas were fraudulent. We disagree. Petitioner's conduct relating to the $7,500 and $54,000 items was materially different from that relating to the $16,500 and $471.45 items. Petitioner altered or caused to be altered a document that he gave to Hughs to support his claim that he paid $7,500 to Special Friends, and he misrepresented to Hughs that Pekas and Davoli provided services for which he paid $54,000. Petitioner took affirmative steps to conceal the truth with respect to those deductions. In contrast, with respect to petitioner's deduction of $16,500 that TruGreen paid to Nelson, respondent showed only that petitioner did not make that payment; there was no accompanying intentionally misleading conduct. Similarly, respondent has failed to show that the $471.45 deduction was fraudulent.

4. Conclusion

Respondent has proven by clear and convincing evidence that petitioner is liable for the fraud penalty under section 6663 for 2000 with respect to the deficiency caused by the fact that petitioner (a) fraudulently deducted $7,500 three times on petitioners' 2000 tax return although they never paid that amount to Special Friends; and (b) fraudulently deducted $54,000 of loan repayments to Davoli and Pekas as legal and professional fees.

F.  Whether Petitioners Are Liable for the Accuracy-Related
    Penalty for the Years in Issue

In the alternative to fraud as to petitioner for 2000, and
with respect to petitioner for 1999 and 2001 and Susan Fairey for
1999-2001, respondent determined and contends that petitioners
are liable for the accuracy-related penalty under section 6662.

The Commissioner bears the burden of production with respect
to penalties and additions to tax.  Sec. 7491(c).  To meet the
burden of production, the Commissioner must produce evidence
showing that it is appropriate to impose the particular penalty
but need not introduce evidence of defenses such as reasonable
cause or substantial authority.  Higbee v. Commissioner, 116 T.C.
438, 446 (2001); H. Conf. Rept. 105-599, at 241 (1998), 1998-3
C.B. 747, 995.

Respondent has met the burden of production for the
accuracy-related penalty under section 6662 because the record
establishes that petitioners deducted amounts for each year in
issue that they were not entitled to deduct and that petitioners
failed to produce, and thus we infer that they failed to keep,
records of claimed unreimbursed employee business expenses, and
travel and entertainment expenses.

Petitioners did not address this issue at trial or on
brief.  We deem it conceded.  See Levin v. Commissioner, 87 T.C.
698, 722-723 (1986), affd. 832 F.2d 403 (7th Cir. 1987);
Zimmerman v. Commissioner, 67 T.C. 94, 104 n.7 (1976).  We

conclude that petitioners are liable for the accuracy-related penalty under section 6662(a) for 1999-2001 except with respect to petitioner to the extent he is liable for fraud for 2000.[8]

G.    Whether Respondent Should Be Sanctioned

Petitioners assert that respondent engaged in, and should be sanctioned for, the following conduct:  (1) Hughs refused to answer 28 written questions from petitioners; (2) Hughs expanded the audit without authority; (3) Hughs said petitioners are tax protesters; (4) respondent refused petitioners' request for a different auditor; (5) petitioners did not receive a copy of the answer until respondent filed a motion for entry of order that undenied allegations in answer be deemed admitted; (6) respondent initiated formal discovery before informal discovery was complete; (7) respondent's counsel had records from petitioners' bank which he denied that he had; and (8) respondent's counsel at trial altered a document created by petitioners.  We disagree. Petitioners have not shown or argued convincingly that respondent should be sanctioned.

To reflect concessions and the foregoing,

Decision will be

entered under Rule 155.

---

[8]  Respondent concedes that the accuracy-related penalty under sec. 6662 does not apply to disallowed deductions for which respondent determined fraud against petitioner.