T.C. Memo. 2012-124

UNITED STATES TAX COURT

DAVID L. BRANSON AND ROSITA W. BRANSON, Petitioners <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18023-10.                    Filed April 26, 2012.

David L. Branson and Rosita W. Branson, pro sese.

<u>Robert H. Berman</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>:  In a notice of deficiency dated May 19, 2010, respondent
determined deficiencies in petitioners' Federal income taxes, accuracy-related
penalties, and fraud penalties under section 6663(a)[1] as follows:

---

[1]Unless otherwise indicated, all section references are to the Internal
(continued...)

| Year | Deficiency | Penalties | |
| | | Sec. 6663(a) | Sec. 6662(a) |
|---|---|---|---|
| 2005 | $145,222 | $108,647 | --- |
| 2006 | 121,048 | 74,630 | $4,308 |
| 2007 | 67,074 | 46,328 | 1,061 |

On September 12, 2011, when petitioners did not appear for the call of their case, respondent filed a motion to dismiss for lack of prosecution with respect to the income tax deficiencies and section 6662(a) accuracy-related penalties. Because fraud penalties were at issue, we set the case for trial on September 14, 2011, and directed respondent to give notice to petitioners by overnight mail delivery. On September 14, 2011, when the case was again called for trial, petitioners did not appear. Respondent introduced evidence in support of his determination that the fraud penalty under section 6663(a) applies for each of the years at issue. The issues for decision are: (1) whether respondent's motion to dismiss for lack of prosecution should be granted; and (2) whether petitioners are liable for the fraud penalties under section 6663(a).

---

[1](...continued)
Revenue Code, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts have been rounded to the nearest dollar.

FINDINGS OF FACT

Petitioners resided in California when they filed their petition.[2]

I.      Background

David L. Branson and Rosita W. Branson married in the 1990s.  Mrs. Branson has three children, including Mark Bella, from a previous marriage.  During the years at issue petitioners maintained three personal bank accounts, including an account ending in 2237 (account 2237) at Parishioners Federal Credit Union (Parishioners),[3] which was titled in Mrs. Branson's name,[4] and two joint accounts, including an account ending in 7317 (account 7317) at Parishioners titled in Mrs. Branson's and Robert Jaworski's[5] names.

---

[2]Generally, this Court applies the law of the circuit in which an appeal would lie.  See Golsen v. Commissioner, 54 T.C. 742 (1970), aff'd, 445 F.2d 985 (10th Cir. 1971).  Absent a stipulation to the contrary, the appropriate venue for appeal is determined on the basis of the taxpayers' legal residence at the time the taxpayers filed their petition.  See sec. 7482(b)(1)(A) and (2).  Although respondent's counsel asserts that petitioners currently are living in the Philippines, we shall apply the law as decided and applied by the U.S. Court of Appeals for the Ninth Circuit because they lived in California when they petitioned this Court and there is no stipulation to the contrary in the record.  See id.

[3]The other personal accounts include two accounts held in Mr. Branson's name.

[4]Rosita Branson's name is sometimes shown as Rose Branson on her bank accounts.

[5]Mr. Jaworski is the husband of Mrs. Branson's cousin, Evelyn Jaworski.

(continued...)

## II.     Petitioners' Businesses and Transactions

During the years at issue petitioners held ownership interests in three different businesses:  Unison Business Services, Inc. (Unison), Executive Management Services, LLC (EMS), and First Capital Limited Partnership (First Capital).  All three businesses shared the same address.  Petitioners maintained bank accounts at Parishioners for Unison, EMS, and First Capital, as follows:  (1) two joint accounts, ending in 2712 (account 2712) and 6634, titled in the names of Unison and petitioners; (2) two joint accounts, ending in 8411 and 8314, titled in the names of EMS and Mrs. Branson; (3) a joint account ending in 9006, titled in the names of EMS, Mr. Bella, and Ann Bella, Mr. Bella's wife; (4) a joint account ending in 9420, titled in the names of EMS and Mr. Bella; and (5) a joint account ending in 8101, titled in the names of First Capital and petitioners.

### A.     Unison

Unison, a C corporation, provided income tax preparation, bookkeeping, and consultation services.  Mr. Branson owned 100% of Unison's stock, and Mrs. Branson served as an officer of Unison.  Unison used a fiscal year beginning August 1.

---

[5](...continued)
Petitioners also held an interest in a joint account ending in 6947 at Parishioners, which was titled in the names of Mrs. Jaworski and Andrea Castillo.

During the years at issue Unison paid substantial personal living expenses for petitioners and their family members, including mortgage payments, utilities, credit card payments, groceries, restaurant bills, and household equipment. Unison recorded some of the personal expenses as business expenses.[6] Unison recorded other personal expenses as payments on an alleged shareholder loan from petitioners to Unison that did not actually exist.

During the years at issue Mrs. Branson wrote numerous checks drawn on Unison account 2712. In 2005 Mrs. Branson wrote four checks to cash, including a check for $3,000 that she later deposited into account 2237, her personal bank account. Mrs. Branson also transferred $4,000 from account 2712 to account 2237. In 2006 Mrs. Branson wrote two checks to cash, including a check for $5,000 that she deposited into account 2237. In 2007 Mrs. Branson wrote one check to cash and made one cash withdrawal.

---

[6]For example, Unison wrote checks to Mr. Jaworski and claimed deductions for alleged "contract services". Mr. Jaworski deposited the checks into account 7317. Mrs. Branson subsequently wrote checks drawn on account 7317 and deposited the amounts into account 2237, her personal account.

B.     EMS

EMS, a limited liability company treated as a partnership for tax purposes,[7] established pension plans for Unison's clients.  In 2005 petitioners owned 100% of EMS.  During 2006 and 2007 petitioners owned 50% of EMS, and Mr. and Mrs. Bella owned the remaining 50%.[8]

In the general ledger for EMS petitioners recorded that EMS transferred pension plan contributions of $241,193, $115,840, and $74,091 for 2005, 2006, and 2007, respectively, to a deferred compensation account.  In 2005 EMS made one wire transfer of $25,000 to a trust pension plan at Edward Jones.  EMS made no other transfers to a pension plan trust account in 2005.  EMS did not transfer any funds to a pension plan trust account in 2006 or 2007.  Petitioners used the alleged pension plan contributions to pay personal living expenses for themselves

---

[7]The unified audit and litigation procedures of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. No. 97-248, sec. 402, 96 Stat. at 648, do not apply to EMS.  EMS qualifies as a small partnership under sec. 6231(a)(1)(B)(i) and did not elect, pursuant to sec. 6231(a)(1)(B)(ii), to have TEFRA apply.  See Wadsworth v. Commissioner, T.C. Memo. 2007-46 (holding that the designation of a tax matters partner on the partnership return, coupled with the absence of any election statement, is not an election to be subject to TEFRA).  The small partnership exception allows this Court "to review in a deficiency suit items that otherwise would be subject to partnership-level proceedings."  Id.; see also New Phoenix Sunrise Corp. v. Commissioner, 132 T.C. 161, 173 n.3 (2009), aff'd, 408 Fed. Appx. 908 (6th Cir. 2010).

[8]Mr. and Mrs. Bella share the profit, but not the loss, from EMS.

and their family members, including car payments and the balance of petitioners' mortgage. EMS deducted some of these expenditures as business expenses.

III.    Petitioners' Tax Reporting

Petitioners jointly filed Forms 1040, U.S. Individual Income Tax Return, for 2005-07. Petitioners also filed Forms 1120, U.S. Corporation Income Tax Return, for Unison,[9] and Forms 1065, U.S. Return of Partnership Income, for EMS.

A.    2005

1.    Petitioners' Tax Return

On their 2005 Form 1040, petitioners reported a total income tax liability of $5,062. Petitioners reported taxable interest income of $514[10] but did not report any amounts received as ordinary or qualified dividends. Petitioners attached to their

---

[9]On its Form 1120 for taxable year ending (TYE) 2005 Unison reported total income of $449,436 and deductions of $449,439, resulting in taxable income of ($3). On its Form 1120 for TYE 2006 Unison reported total income of $607,137, deductions of $570,878, and a net operating loss carryforward deduction (NOL) of $5, resulting in taxable income of $36,254. On its Form 1120 for TYE 2007, Unison reported total income of $629,467, total deductions of $495,022, and an NOL of $9, resulting in taxable income of $134,436.

[10]Petitioners attached to their Form 1040 a Schedule B, Interest and Ordinary Dividends, on which they reported interest received from Equitable Life Assurance Society, Parishioners, EMS, and First Capital, totaling $514.

Form 1040 a Schedule E, Supplemental Income and Loss, on which they reported total partnership and S corporation income of $31,735.[11]

## 2. Form 1065

On its 2005 Form 1065 EMS reported gross receipts of $269,066 and deducted the following expenses: salaries and wages of $7,150, taxes and licenses of $2,023, and depreciation of $17,055. EMS also claimed a $241,193 deduction for retirement plan expenses and a $1,800 deduction for employee benefit programs. On an attached Schedule K, Partners' Distributive Share Items, EMS reported interest income of $156. EMS also attached two Schedules K-1, Partner's Share of Income, Credits, Deductions, etc., one for each of Mr. and Mrs. Branson, on which EMS reported their shares of partnership items as follows: (1) ordinary business losses of $78 and $77 to Mr. Branson and Mrs. Branson, respectively; and (2) interest income of $78 to each.

---

[11]On a statement attached to their Form 1040, petitioners reported a passive loss with respect to EMS totaling $4,086 and passive income with respect to First Capital totaling $35,821.

B.    2006

    1.    Petitioners' Tax Return

For 2006 petitioners reported a total income tax liability of $1,990.

Petitioners reported taxable interest income of $819,[12] a capital loss deduction of

$3,000,[13] and business income of $30,725 but did not report any amounts received

as ordinary or qualified dividends. Petitioners attached to their Form 1040 two

Schedules C, Profit or Loss From Business (Sole Proprietorship). On one Schedule

C, petitioners identified Mr. Branson as the proprietor, indicated that the principal

business was consulting, and reported net income of $20,000. On the other

Schedule C, petitioners identified Mrs. Branson as the proprietor, indicated that the

principal business was administrative services, and reported net income of $10,725.

    2.    Form 1065

On its 2006 Form 1065 EMS reported gross receipts of $362,720 and

deducted the following expenses: salaries and wages of $26,575, repairs and

maintenance of $3,312, taxes and licenses of $4,304, interest of $1,332, and

---

[12]Petitioners did not attach a Schedule B to their 2006 Form 1040.

[13]Petitioners attached to their 2006 Form 1040 a Schedule D, Capital Gains and Losses.

depreciation of $16,745. EMS also claimed a $170,840 deduction for retirement plan expenses, a $1,704 deduction for employee benefit programs, and "[o]ther deductions" totaling $154,552. EMS attached four Schedules K-1, one for each of Mr. and Mrs. Branson and Mr. and Mrs. Bella.[14] On the Schedule K-1 for Mr. Branson EMS reported his share of partnership items as follows: (1) ordinary business loss of $8,322; (2) interest income of $51; and (3) distributions of $23,392. On the Schedule K-1 for Mrs. Branson EMS reported her share of partnership items as follows: (1) ordinary business loss of $8,322; (2) interest income of $50; and (3) distributions of $23,391.

    C.    <u>2007</u>

        1.    <u>Petitioners' Tax Return</u>

For 2007 petitioners reported a total income tax liability of $3,320. Petitioners reported taxable interest income of $888 and a capital loss deduction of $3,000 but did not report any amounts received as ordinary or qualified dividends. Petitioners attached a Schedule E on which they reported total partnership and S corporation income of $23,497.[15]

---

[14]On the Schedules K-1, EMS reported that Mr. and Mrs. Bella did not share in any items of partnership income or loss.

[15]On the Schedule E petitioners reported nonpassive losses totaling $1,828

(continued...)

2.    Form 1065

On its 2007 Form 1065, EMS reported gross receipts of $184,827 and deducted the following expenses: repairs and maintenance expenses of $1,464, taxes and licenses of $1,298, interest of $1,675, and depreciation of $23,029. EMS also claimed a $74,091 deduction for retirement plan expenses, a $2,165 deduction for employee benefit programs, and "[o]ther deductions" totaling $82,933. EMS attached four Schedules K-1, one for each of Mr. and Mrs. Branson and Mr. and Mrs. Bella.[16] On the Schedules K-1 for Mr. and Mrs. Branson EMS reported that each was allocated an ordinary business loss of $914 and interest income of $47.

IV.    The Audit and Notice of Deficiency

Christiane Thai is a revenue agent with the special enforcement program of the IRS. Ms. Thai was assigned the examination of petitioners' and Unison's 2005-07 returns. As part of her examination, Ms. Thai also examined returns filed by EMS. Petitioners provided Ms. Thai with general ledgers for EMS and Unison.

_____

[15](...continued)
and nonpassive income totaling $25,325. Petitioners indicated that the Schedule E included information with respect to EMS and First Capital, but they did not allocate the losses and income to a particular business.

[16]On the Schedules K-1, EMS reported that Mr. and Mrs. Bella did not share in any items of partnership income or loss.

With respect to EMS, respondent prepared a Form 4549-B, Income Tax Examination Changes, and a Form 4605, Examination Changes--Partnerships, Fiduciaries, Small Business Corporations, and Domestic International Sales Corporations, on the basis of the general ledgers petitioners provided. Respondent disallowed in full the claimed deductions for contributions to retirement plans for 2005-07.[17] For 2005 respondent also disallowed in full claimed deductions for depreciation and employee benefit programs and determined that EMS had additional unreported income of $279. For 2006 respondent disallowed in full claimed deductions for depreciation, employee benefit programs, and repairs and maintenance, disallowed $109,981 of "[o]ther deductions" claimed, and determined that EMS had additional unreported income of $468. For 2007 respondent disallowed in full claimed deductions for depreciation, employee benefit programs, and taxes and licenses,[18] disallowed $1,191 of the repairs and maintenance

---

[17]Respondent disallowed the claimed deductions for two reasons. First, the EMS retirement plan was not a qualified plan. Second, EMS did not actually transfer the claimed amounts from its bank account to a pension plan trust account. EMS did not transfer any amounts from its bank account to a pension plan trust account in 2006-07. Respondent identified one transfer of $25,000 from EMS to an Edward Jones pension plan account in 2005; however, respondent disallowed a deduction for the $25,000 transfer because the alleged plan was not a qualified plan.

[18]On the Form 4549-B respondent adjusted income by disallowing a claimed

(continued...)

deduction and $47,992 of "[o]ther deductions" claimed, and determined that EMS had additional unreported income of $290.

For 2005 respondent allocated 100% of EMS' income to petitioners. For 2006 and 2007 respondent allocated 50% of EMS' income to petitioners, 25% to Mr. Bella, and 25% to Mrs. Bella.[19] Consequently, respondent determined that petitioners received flowthrough income from EMS of $260,482, $103,877, and $76,106 for 2005, 2006, and 2007, respectively.

With respect to Unison, respondent determined that petitioners had used funds in Unison's bank accounts to pay various personal expenses. On its general ledgers Unison recorded payment of petitioners' personal expenses either as business expenses[20] or payments on the shareholder loan. Respondent treated the amounts expended for petitioners' personal expenses as constructive dividends to

---

[18](...continued)
deduction of $1,625 for taxes and licenses. On its 2007 Form 1065, EMS claimed only a deduction of $1,298 for taxes and licenses.

[19]In 2006 Mr. and Mrs. Bella each became a 25% partner of EMS.

[20]Unison recorded petitioners' personal expenses under various headings, including computer expenses, equipment rental, health insurance, supplies, repairs and maintenance, utilities, advertising, reimbursed expenses, employee benefit program expenses, outside services (professional), travel expenses, contract service, janitorial expenses, property insurance, and office expenses.

them and determined that they received from Unison constructive dividends of $249,619, $278,214, and $161,768 for 2005, 2006, and 2007, respectively.[21]

On May 19, 2010, respondent issued to petitioners a notice of deficiency for 2005-07 making the following adjustments:

- increased petitioners' income for 2005 by $35,443 for constructive dividends received from Unison;[22]

- increased petitioners' income for qualified dividends received from Unison by $212,550, $278,214, and $161,768, for 2005, 2006, and 2007, respectively;[23]

---

[21]Because Unison used a fiscal year different from petitioners' for tax purposes, during the examination Ms. Thai broke down the constructive dividends paid by Unison into seven months and five months periods (from January to July and from August to December). Petitioners did not produce Unison's general ledger for the period from August to December 2007.

[22]In the notice of deficiency respondent determined that for 2005 petitioners received constructive dividends in excess of Unison's earnings and profits. Consequently, respondent reduced to zero petitioners' basis in Unison stock. Respondent also determined that for 2005 petitioners received constructive dividends in excess of earnings and profits. Respondent treated the amount of constructive dividends in excess of earnings and profits, $35,443, as capital gains.

[23]Respondent determined that the corporate benefits petitioners received from Unison were taxable as constructive dividends. Respondent classified the dividends as qualified dividends in the notice of deficiency.

- increased petitioners' Schedule E income with respect to EMS as follows: by $130,242, $51,938, and $38,053, for 2005, 2006, and 2007, respectively, as to Mrs. Branson and by $130,240, $51,939, and $38,053, for 2005, 2006, and 2007, respectively, as to Mr. Branson;

- increased Mrs. Branson's Schedule E income with respect to First Capital by $5,854 for 2005;

- increased Mr. Branson's Schedule E income with respect to First Capital by $5,855 for 2005;

- disallowed claimed net operating loss (NOL) carryforwards of $192,837 and $68,035 for 2006 and 2007, respectively; and

- disallowed $3,000 capital loss deductions petitioners claimed for 2006 and 2007.

Respondent also determined that petitioners were liable for the fraud penalty under section 6663(a) and, alternatively for the accuracy-related penalty under section 6662.

V.    Petitioners' Tax Court Proceeding

On August 11, 2010, petitioners filed a petition with this Court in which they alleged that respondent's determinations in the notice of deficiency were erroneous and that they should not be held liable for the penalties.  We set petitioners' case for

trial during our September 12, 2011, Los Angeles, California, trial session, and mailed to them a notice setting case for trial and a standing pretrial order dated April 8, 2011. The notice warned petitioners that "[y]our failure to appear may result in dismissal of the case and entry of decision against you." The standing pretrial order required the parties to prepare a stipulation of facts and stated that the failure of either party to cooperate in the preparation of this stipulation could result in sanctions. The order also required each party to prepare a pretrial memorandum and submit copies to the Court and the opposing party at least two weeks before the first day of the trial session.

On April 27, 2011, respondent filed a motion for leave to file amendment to answer, and the Court lodged respondent's amendment to answer. By order dated May 5, 2011, we ordered petitioners to file a response to respondent's motion. Petitioners did not file a response and, consequently, we granted respondent's motion and filed respondent's amendment to answer.

On June 30, 2011, respondent mailed petitioners a letter inviting them to a stipulation of facts conference on July 11, 2011, and requesting that they produce all documents they intended to introduce at trial. Respondent warned petitioners that if they failed to appear at the scheduled trial session, the Court could dismiss their case and enter a decision against them. After petitioners failed to attend the

conference, respondent mailed them another letter reminding them of the Court's standing pretrial order and of the Rules regarding pretrial preparation. Petitioners did not respond to any letters or exchange any documents with respondent.

On August 1, 2011, respondent filed a motion for entry of order that undenied allegations in the answer be deemed admitted pursuant to Rule 37(c). By order dated August 3, 2011, we ordered petitioners to file a reply to respondent's motion. Petitioners failed to file a reply to respondent's motion, and we granted respondent's motion.

On August 26, 2011, respondent filed and served a pretrial memorandum. Petitioners did not file or serve a pretrial memorandum. On August 26, 2011, respondent mailed to petitioners a letter advising them that respondent's counsel was available for a conference to discuss the case, exchange documents, and prepare a stipulation of facts. Respondent again warned petitioners that their failure to appear at the scheduled trial session could result in dismissal of the case and an entry of judgment against them. Petitioners did not respond to this letter.

On September 12, 2011, petitioners failed to appear at the calendar call. Respondent's counsel appeared and filed with the Court a motion to dismiss for lack of prosecution with respect to the deficiencies in petitioners' income tax and the

section 6662(a) penalties. We took respondent's motion under advisement and set trial for September 14, 2011.

On September 14, 2011, this case was called for trial. Petitioners did not appear. Respondent's counsel represented to the Court that he provided notice of the trial to petitioners by overnight mail. To date, petitioners have not filed a response to the motion to dismiss.

## OPINION

### I.     Motion To Dismiss

The Court may dismiss a case at any time and enter a decision against the taxpayer for failure to prosecute his case properly, failure to comply with the Rules of the Court or any order of the Court, or for any cause that the Court deems sufficient. See Rule 123(b). Dismissal is appropriate where the taxpayer's failure to comply with the Court's Rules and orders is due to willfulness, bad faith, or fault. See Larsen v. Commissioner, 765 F.2d 939, 941 (9th Cir. 1985); Dusha v. Commissioner, 82 T.C. 592, 599 (1984). In addition, the Court may dismiss a case for lack of prosecution if the taxpayer inexcusably fails to appear at trial or does not otherwise participate in the resolution of his claim. See Rule 149(a); Noli v. Commissioner, 860 F.2d 1521, 1527 (9th Cir. 1988).

Petitioners have disregarded the Court's Rules and standing pretrial order by failing to cooperate with respondent to prepare this case for trial. Petitioners failed to prepare and submit a pretrial memorandum as required by the Court's order and have yet to produce any relevant documents. Petitioners failed to appear at the calendar call and at the scheduled trial. Petitioners' pattern of inaction made it impossible for the parties to exchange information, conduct negotiations, or prepare a stipulation of facts before trial. Petitioners' course of conduct reflects a consistent failure to abide by this Court's Rules and orders.

This Court and respondent's counsel repeatedly warned petitioners of the consequences of failing to prepare for trial and of failing to appear for trial. Despite those warnings, petitioners failed to make any reasonable effort to demonstrate their good faith and willingness to prepare this case for trial. For all of these reasons, we find that petitioners have failed to comply with the Court's Rules and orders and have failed to properly prosecute this case. See Noli v. Commissioner, 860 F.2d at 1527.

With respect to the deficiencies in petitioners' Federal income tax, petitioners have failed to raise any issue or introduce any evidence despite the fact that they bear the burden of proof. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933) (holding that the Commissioner's determinations in a notice of deficiency are

presumed correct and the taxpayer bears the burden of proving them incorrect).[24]

Although respondent concedes that he bears the burden of production with respect to the section 6662(a)[25] accuracy-related penalties, see sec. 7491(c), respondent has carried the burden of production by introducing evidence establishing a basis for the deficiencies and the section 6662(a) penalties determined in the notice of deficiency. Accordingly, we shall grant respondent's motion to dismiss this case for lack of prosecution with respect to the deficiencies

---

[24]The U.S. Court of Appeals for the Ninth Circuit has held that for the presumption of correctness to attach to the notice of deficiency in unreported income cases, the Commissioner must establish "some evidentiary foundation" connecting the taxpayer with the income-producing activity, see Weimerskirch v. Commissioner, 596 F.2d 358, 361-362 (9th Cir. 1979), rev'g 67 T.C. 672 (1977), or demonstrating that the taxpayer actually received unreported income, see Edwards v. Commissioner, 680 F.2d 1268, 1270-1271 (9th Cir. 1982). All of the facts upon which respondent relies to link petitioners to the income-producing activities have been deemed admitted by operation of Rule 37(c). On the basis of the deemed admissions, we conclude that respondent has established an evidentiary foundation linking petitioners to the income-producing activities. See Vogt v. Commissioner, T.C. Memo. 2007-209, aff'd, 336 Fed. Appx. 758 (9th Cir. 2009).

[25]Generally, sec. 6662(a) and (b)(2) authorizes the Commissioner to impose a 20% penalty if there is an underpayment due to a substantial understatement of income tax. An "understatement" means the excess of the amount of tax required to be shown on the return over the amount of tax which is shown on the return, reduced by any rebate. Sec. 6662(d)(2)(A). An understatement is substantial if the amount of the understatement for the taxable year exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A).

in petitioners' Federal income tax and the section 6662(a) accuracy-related penalties for 2006 and 2007.[26]

## II. Section 6663(a) Fraud Penalty

If any part of an underpayment on a return is due to fraud, section 6663(a) imposes on the taxpayer filing the return a penalty equal to 75% of the part of the underpayment attributable to fraud. To prove that a taxpayer is liable for the penalty, the Commissioner must prove by clear and convincing evidence that (1) an underpayment of tax exists, and (2) some part of the underpayment is due to fraud. See secs. 6663(a), 7454(a); Rule 142(b); DiLeo v. Commissioner, 96 T.C. 858, 873 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992). If the Commissioner proves that any part of an underpayment is attributable to fraud, then the entire underpayment shall be treated as attributable to fraud unless the taxpayer shows by a preponderance of the evidence that a part was not so attributable. See sec. 6663(b).

---

[26]Respondent determined that the sec. 6662(a) penalty applies only to $21,541 and $5,304 of petitioners' underpayments for 2006 and 2007, respectively. Respondent determined that the sec. 6663(a) penalty applies to the remaining portions of the underpayments, or $99,507 and $61,770 for 2006 and 2007, respectively. Respondent is not attempting to impose duplicate penalties with respect to the same portions of the underpayments. Respondent did not determine a sec. 6662(a) penalty for 2005.

A.      Underpayment of Tax

In the notice of deficiency respondent determined that petitioners underpaid their 2005, 2006, and 2007 Federal income taxes by $145,222, $121,048, and $67,074, respectively.  We find that respondent has proven by clear and convincing evidence that petitioners underpaid their Federal income taxes for the years at issue. See Gilday v. Commissioner, 62 T.C. 260, 261 (1974); see also Tonn v. Commissioner, T.C. Memo. 1982-118.

B.      Fraudulent Intent

1.      Introduction

If fraud is determined for multiple taxable years, the Commissioner's burden "applies separately for each of the years."  Temple v. Commissioner, T.C. Memo. 2000-337, aff'd, 62 Fed. Appx. 605 (6th Cir. 2003).  The Commissioner satisfies this burden by showing that "the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead or otherwise prevent the collection of taxes."  DiLeo v. Commissioner, 96 T.C. at 874.  Fraud "does not include negligence, carelessness, misunderstanding or unintentional understatement of income."  United States v. Pechenik, 236 F.2d 844, 846 (3d Cir. 1956).

The existence of fraud is a question of fact to be resolved upon consideration of the entire record.  See DiLeo v. Commissioner, 96 T.C. at 874.  Fraud is never presumed and must be established by independent evidence of fraudulent intent.  See Baumgardner v. Commissioner, 251 F.2d 311, 322 (9th Cir. 1957), aff'g T.C. Memo. 1956-112.  Fraud may be shown by circumstantial evidence because direct evidence of the taxpayer's fraudulent intent is seldom available.  See Petzoldt v. Commissioner, 92 T.C. 661, 699 (1989); Gajewski v. Commissioner, 67 T.C. 181, 199-200 (1976), aff'd without published opinion, 578 F.2d 1383 (8th Cir. 1978).  The taxpayer's entire course of conduct may establish the requisite fraudulent intent.  See Stone v. Commissioner, 56 T.C. 213, 223-224 (1971).  Any conduct likely to mislead or conceal may constitute an affirmative act of evasion, see Spies v. United States, 317 U.S. 492, 499 (1943), and an intent to mislead may be inferred from a pattern of such conduct, see Webb v. Commissioner, 394 F.2d 366, 379 (5th Cir. 1968), aff'g T.C. Memo. 1966-81.  However, fraud is not proven when a court is left with only a suspicion of fraud, and even a strong suspicion is not sufficient to establish a taxpayer's liability for the fraud penalty.  See Olinger v. Commissioner, 234 F.2d 823, 824 (5th Cir. 1956), aff'g in part and rev'g in part on another ground T.C. Memo. 1955-9; Davis v. Commissioner, 184 F.2d

86,87 (10th Cir. 1950); Green v. Commissioner, 66 T.C. 538, 550

(1976).

2.     Badges of Fraud

Because it is difficult to prove fraudulent intent by direct evidence, the

Commissioner may establish fraud by circumstantial evidence, which includes

various "badges of fraud" (hereinafter, factors) on which the courts often rely.  See

Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), aff'g T.C. Memo.

1984-601; DiLeo v. Commissioner, 96 T.C. at 875.  These factors focus on whether

the taxpayer engaged in certain conduct that is indicative of fraudulent intent, such

as:  (1) understating income; (2) failing to maintain adequate records; (3) offering

implausible or inconsistent explanations; (4) concealing income or assets; (5) failing

to cooperate with tax authorities; (6) engaging in illegal activities; (7) providing

incomplete or misleading information to the taxpayer's tax return preparer; (8)

offering false or incredible testimony; (9) filing false documents, including filing

false income tax returns; (10) failing to file tax returns; and (11) engaging in

extensive dealings in cash.[27]  See Bradford v. Commissioner, 796 F.2d at 307-308;

Parks v. Commissioner, 94 T.C. 654, 664-665 (1990); Recklitis v. Commissioner,

---

[27]These factors are nonexclusive.  See Niedringhaus v. Commissioner, 99
T.C. 202, 211 (1992).

91 T.C. 874, 910 (1988); Lipsitz v. Commissioner, 21 T.C. 917 (1954), aff'd, 220 F.2d 871 (4th Cir. 1955); see also Morse v. Commissioner, T.C. Memo. 2003-332, aff'd, 419 F.3d 829 (8th Cir. 2005). The existence of any one factor is not dispositive, but the existence of several factors is persuasive circumstantial evidence of fraud. See Niedringhaus v. Commissioner, 99 T.C. 202, 211 (1992); Petzoldt v. Commissioner, 92 T.C. at 700.

Respondent determined that $144,862, $99,507, and $61,770 of petitioners' underpayments for 2005, 2006, and 2007, respectively, were due to fraud. Respondent contends that petitioners are deemed to have admitted their fraudulent intent with respect to these underpayments by virtue of this Court's order dated August 31, 2011, whereby we granted respondent's motion under Rule 37(c).[28] We agree and, consequently, we deem petitioners to have admitted their fraudulent intent with respect to the underpayments.

While we give some weight to the deemed admission in our analysis, we do not rely exclusively on it in deciding whether the fraud penalty should apply.

---

[28]In respondent's amendment to answer, respondent alleged that petitioners "understated their tax liabilities on their income tax returns due to fraud for the taxable 2005, 2006, and 2007". Because we granted respondent's motion under Rule 37(c), this fact is deemed admitted.

Respondent also contends that the following factors are present in this case: (1) petitioners underreported their income for the years at issue; (2) petitioners failed to maintain adequate records for the years at issue; (3) petitioners concealed income and assets for the years at issue; (4) petitioners failed to cooperate with tax authorities regarding the years at issue; and (5) petitioners engaged in extensive dealings in cash for the years at issue. Because we decide the existence of fraudulent intent on the basis of the entire record, we analyze each factor below.

### a. Understating Income

A pattern of substantially underreporting income for several years is strong evidence of fraud, particularly if the reason for the understatements is not satisfactorily explained or due to innocent mistake. See Holland v. United States, 348 U.S. 121, 137-139 (1954); Spies, 317 U.S. at 499; Webb v. Commissioner, 394 F.2d at 379. The U.S. Court of Appeals for the Ninth Circuit, to which an appeal in this case would lie absent a stipulation to the contrary, see sec. 7482(b)(1)(A), has stated that "repeated understatements in successive years when coupled with other circumstances showing an intent to conceal or misstate taxable income present a basis on which the Tax Court may properly infer fraud." Furnish v. Commissioner, 262 F.2d 727, 728-729 (9th Cir. 1958), aff'g in part and remanding in part Funk v.

Commissioner, 29 T.C. 279 (1957); see also Energy Research & Generation, Inc. v.

Commissioner, T.C. Memo. 2011-45.

On their original tax returns petitioners reported taxable income of $10,627

for 2005, zero for 2006, and zero for 2007.  Petitioners underreported their taxable

income by $520,184, $382,091, and $237,874[29] for 2005, 2006, and 2007,

respectively.  Petitioners failed to report over 95% of their total taxable income for

each of the years at issue.

We find that petitioners substantially underreported their income for 2005,

2006, and 2007.  Given the substantial amounts underreported, their pattern of

underreporting income, and their lack of any explanation for the underreporting,

petitioners' understatements are persuasive evidence of fraudulent intent.  See, e.g.,

Morse v. Commissioner, 419 F.3d at 832.

### b.     Failing To Maintain Adequate Records

The failure to maintain adequate business records supports a finding of fraud.

See Truesdell v. Commissioner, 89 T.C. 1280, 1302-1303 (1987); see also

Grosshandler v. Commissioner, 75 T.C. 1, 20 (1980).  The U.S. Court of Appeals

---

[29]These figures include adjustments to income with respect to petitioners' Schedules E, constructive dividends from Unison, and, for taxable year 2005, capital gain from Unison.  These figures do not include adjustments not due to fraud, including adjustments to Social Security income, capital gains, and NOL carryforwards.

for the Ninth Circuit has stated that "[i]nadequate or non-existent records are also a badge of fraud." Lollis v. Commissioner, 595 F.2d 1189, 1192 (9th Cir. 1979), aff'g T.C. Memo. 1976-15; see also Said v. Commissioner, T.C. Memo. 2003-148, aff'd, 112 Fed. Appx. 608 (9th Cir. 2004).

Ms. Thai testified that she repeatedly asked petitioners to provide records and documentation and that they failed to do so. Ms. Thai further testified that the general ledgers petitioners provided contained falsified information, including the entry of personal expenses as business expenses and the recording of a nonexistent shareholder loan. Petitioners provided no documentation to support any items in the general ledgers.

Although petitioners kept general ledgers to reflect their business activity, the general ledgers contained falsified and inaccurate information. Additionally, petitioners failed to keep adequate records to substantiate the items in the general ledgers. Petitioners offered no explanation regarding the nonexistence of their business records. Petitioners' inadequate and missing records are indicative of fraud.

c. Concealing Assets or Income

An intent to evade tax may be inferred by "concealment of assets or covering up sources of income". Spies, 317 U.S. at 499. A taxpayer's use of a business to

conceal the personal nature of expenses is also evidence of fraud. See Benes v. Commissioner, 42 T.C. 358, 383 (1964), aff'd, 355 F.2d 929 (6th Cir. 1966); Evans v. Commissioner, T.C. Memo. 2010-199; Romer v. Commissioner, T.C. Memo. 2001-168. A taxpayer's concealment of the ownership of assets or income supports a finding of fraud. See Ruark v. Commissioner, 449 F.2d 311, 313 (9th Cir. 1971), aff'g T.C. Memo. 1969-48.

Petitioners caused Unison to write checks to Mr. Jaworski and charge the expenditures as "contract labor expenses". After Mr. Jaworski deposited the checks into account 7317, Mrs. Branson wrote checks from account 7317 and deposited them into account 2237. When Ms. Thai questioned Mrs. Branson about account 7317, Mrs. Branson denied that she held any ownership interest in the account. Unison also recorded the payment of personal expenses as payments on a nonexistent shareholder loan.[30]

Mrs. Branson wrote checks from Unison account 2237 to herself, to her children, and to cash. Petitioners used the funds in the Unison account to pay personal living expenses for themselves and family members, thereby disguising their personal expenses as business expenses. See, e.g., Romer v. Commissioner,

---

[30]In addition, EMS transferred money to a deferred compensation account, which petitioners used to pay personal living expenses.

T.C. Memo. 2001-168. The business funds used to pay these personal expenses constituted constructive dividends, and therefore income, to petitioners.[31]

Petitioners engaged in various transactions to conceal their ownership of income, and the manner in which they engaged in these transactions provides further evidence of fraud. Petitioners concealed income by treating personal expenditures as business expenses and failing to report the expenditures as income on their returns. We find that petitioners concealed income by using the entity bank accounts to pay for their personal living expenses.

### d.      Failing To Cooperate With Tax Authorities

Failure to cooperate with revenue agents during an investigation is a badge of fraud. See Lord v. Commissioner, 525 F.2d 741, 747-748 (9th Cir. 1975), aff'g in part, rev'g in part 60 T.C. 199 (1973); Grosshandler v. Commissioner, 75 T.C. at

---

[31]Sec. 61(a) defines gross income as "all income from whatever source derived". A constructive dividend is "simply a corporate disbursement that is a dividend in the contemplation of law though not called such by the corporation making the disbursement." United States v. Mews, 923 F.2d 67, 68 (7th Cir. 1991). For a payment to be a constructive dividend to a shareholder, the corporation need not pay it directly to the shareholder. Id. When a corporation confers an economic benefit on a shareholder without expectation of reimbursement, that economic benefit becomes a constructive dividend. Benson v. Commissioner, 560 F.3d 1133, 1134 (9th Cir. 2009), aff'g T.C. Memo. 2004-272 and T.C. Memo. 2006-55; Thorpe v. Commissioner, T.C. Memo. 1998-115.

20. This failure is persuasive evidence of a taxpayer's guilty knowledge. See Prof'l Servs. v. Commissioner, 79 T.C. 888, 932-933 (1982).

Ms. Thai testified that during the investigation she asked petitioners to provide documentation to support various items in the general ledgers and that they failed to do so. Ms. Thai further testified that when she asked Mrs. Branson for additional information regarding account 7317, Mrs. Branson stated that it was not her bank account. Upon further investigation however, Ms. Thai discovered that Mrs. Branson was a joint owner of account 7317 and that Mrs. Branson had written checks drawn on the account, which she later deposited into account 2237. During the course of the examination petitioners provided to Ms. Thai copies of their 2006 and 2007 Forms 1040 that differed from those previously filed.[32]

Petitioners failed to provide any documents to substantiate the amount or business purpose of any item in the general ledger. Petitioners provided no documentation to substantiate the alleged shareholder loan. Petitioners provided Forms 1040 that differed substantially from those they previously filed. We find that petitioners failed to cooperate with respondent's revenue agent, Ms. Thai.

---

[32]On the Forms 1040 petitioners reclassified as shareholder loans a majority of the expenses that Ms. Thai had determined were personal expenses.

e.        Extensive Dealings in Cash

Extensive dealings in cash to avoid scrutiny of a taxpayer's finances is a badge of fraud.  See Bradford v. Commissioner, 796 F.2d at 307-308.  Fraudulent intent may be inferred when a taxpayer handles his affairs in a manner designed "to avoid making the records usual in transactions of the kind".  Spies, 317 U.S. at 499.  In particular, when a taxpayer's dealings in cash are accompanied by attempts to conceal income or avoid cash transaction reporting requirements, that course of conduct is probative evidence of fraud.  See Valbrun v. Commissioner, T.C. Memo. 2004-242.  Failure to maintain records concerning cash transactions is evidence of fraud.  See Choi v. Commissioner, T.C. Memo. 2002-183, aff'd, 379 F.3d 638 (9th Cir. 2004).

Mrs. Branson wrote numerous checks drawn on Unison account 2712 to cash during the years at issue.  In some instances, Mrs. Branson deposited the cash into account 2237, her personal account.  Ms. Thai was unable to trace the whereabouts of two checks written to cash, including one in 2005 for $2,000 and another in 2007 for $9,000.  Petitioners provided no explanations or records concerning the cash transactions.  We find that petitioners engaged in cash transactions to conceal income and failed to maintain records concerning those cash transactions.

C.    Conclusion

Respondent has proven by clear and convincing evidence that petitioners underpaid their tax liabilities for 2005, 2006, and 2007 and that some part of the underpayment for each year was due to fraud.  Petitioners bear the burden of showing by a preponderance of the evidence what portion of each underpayment, if any, is not attributable to fraud.  See sec. 6663(b).  Petitioners have not argued or introduced any credible evidence to prove that any specific portion of any underpayment was not attributable to fraud.  The record overwhelmingly establishes that petitioners acted with fraudulent intent.  Accordingly, we hold that petitioners are liable for the section 6663(a) fraud penalties as determined by respondent.

We have considered all the other arguments made by the parties, and to the extent not discussed above, find those arguments to be irrelevant, moot, or without merit.

To reflect the foregoing,

An appropriate order and decision will be entered.