T.C. Memo. 2012-297

UNITED STATES TAX COURT

LINDA G. GAITOR, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19475-10.                    Filed October 24, 2012.

Linda G. Gaitor, pro se.

Brandon S. Cline, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WHALEN, Judge:  In two notices of deficiency issued to petitioner, one for

taxable year 2005 and a second for taxable years 2006, 2007, and 2008, respondent

determined the following tax deficiencies, additions to tax, and penalties in

petitioner's Federal income tax:

[*2]

| Year | Deficiency | Addition to Tax Sec. 6651(a)(1) | Penalty Sec. 6662(a) |
|------|-----------|--------------------------------|----------------------|
| 2005 | $7,610 | $1,527.75 | $1,522.00 |
| 2006 | 11,964 | 2,271.00 | 2,392.80 |
| 2007 | 12,645 | 2,399.25 | 2,529.00 |
| 2008 | 10,227 | -- | 2,045.40 |

All section references are to the Internal Revenue Code, as amended and in effect during the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The Notices of Deficiency

The tax deficiencies are based upon adjustments to petitioner's taxable income for the years in issue, together with the disallowance of certain credits, as shown below:

| Adjustments | 2005 | 2006 | 2007 | 2008 |
|-------------|------|------|------|------|
| Schedule E--Disallowed expenses | $37,698 | $35,217 | $36,980 | $30,700 |
| Schedule E--Income rents | -- | -- | 2,001 | 2,757 |
| Itemized deductions--Medical and dental | -- | 20,636 | 536 | -- |
| Itemized deductions-- Miscellaneous deductions, union dues | -- | 230 | -- | -- |
| Cash contributions | -- | -- | -- | 4,000 |
| Home mortgage interest | -- | -- | 3,790 | -- |
| Other miscellaneous deductions-- business expense | -- | -- | 6,000 | -- |

| [*3] Adjustments | 2005 | 2006 | 2007 | 2008 |
|---|---|---|---|---|
| Unreimbursed employee expenses | -- | -- | -- | 4,578 |
| Excess miscellaneous deductions | 553 | -- | 143 | -- |
| Debt cancellation (Household Finance) | -- | 4,632 | -- | -- |
| Gambling winnings--Seminole Tribe of Florida, bingo | -- | 1,285 | -- | -- |
| Exemptions for grandchildren C.K. ('07) and J.M. ('08) | -- | -- | 3,400 | 3,500 |
| Total adjustments to taxable income | 38,251 | 62,000 | 52,850 | 45,535 |

| Disallowed Credits | 2005 | 2006 | 2007 | 2008 |
|---|---|---|---|---|
| Child tax credit--C.K. | -- | -- | $1,000 | -- |
| Child tax credit--J.M. | -- | -- | -- | 798 |
| Recovery rebate credit | -- | -- | -- | 300 |
| Additional child tax credit--J.M. | -- | -- | -- | 202 |

The Petition

In response to the notices of deficiency, petitioner timely filed a petition in which she asked the Court to redetermine the deficiency for each year because she disagreed with some, but not all, of the adjustments determined for that year. The petition, quoted below, sets forth the following reasons petitioner agreed or disagreed with respondent's determinations (i.e., her concession and assignments of error):

1. Debt cancellation by Household Finance was valid and the amount was taxable income.

**[*4]** 2.     Rent received for rental property is incorrectly stated.

3.     I am allowed to claim as [sic] my gambling as winning.  Per win/loss statements were sent to sustain.

4.     Medical expenses are correct since I had to pay for attendant care for my parents while I worked since mine was [sic] unable to walk or move with [sic] assistant [sic].

5.     Home interest was denied some was on a 1099 and other were from a recorded mortgage transaction.  Repairs made to my rental property were denied.

6.     Examiner advised me that since I was sick I could mail or fax supporting documents; however, IRS examiner refused to accept anything from me and stated I refused to come to an IRS office.

7.     I am allowed to claim a loss due to rent not received due to non-payment by tenant.

8.     I am allowed to claim the expenses paid to get a loan on my investment property.

9.     Also, examiner stated that she was upset because I called her supervisor.

There is no mention in the petition of the following adjustments determined in the notices of deficiency:

(a)  respondent's disallowance of the deduction for cash contributions of $4,000 claimed for taxable year 2008;

**[*5]**  (b)  respondent's disallowance of the deduction for unreimbursed employee expenses of $4,900 claimed for taxable year 2008 (as to which the net adjustment determined in the notice of deficiency was $4,578);

(c)  respondent's disallowance of the deduction of a personal exemption with respect to an individual referred to as "C.K." for taxable year 2007 and respondent's disallowance of a child tax credit with respect to the same individual;

(d)  respondent's disallowance of the deduction of a personal exemption with respect to an individual referred to as "J.M." for taxable year 2008 and respondent's disallowance of a child tax credit, an additional child tax credit, and a recovery rebate tax credit with respect to the same individual;

(e)  respondent's determinations that petitioner is liable for additions to tax under section 6651(a)(1) for taxable years 2005 through 2007; and

(f)  respondent's determinations that petitioner is liable for accuracy-related penalties under section 6662(a) for taxable years 2005 through 2008.

<u>The Issues Raised in the Petition</u>

After her concession of the increase of her taxable income for 2006 by $4,632 for debt cancellation (item 1, above), we find that petitioner raised the following six issues in her petition:

**[*6]** (1) whether petitioner is allowed the deductions claimed on the Schedule E, Supplemental Income and Loss, filed with her return for each of the subject years (items 5 and 8, above);

(2) whether for taxable years 2007 and 2008 petitioner realized taxable rental income of $2,001 and $2,757 more than the amounts reported on her Schedules E for those years (item 2, above);

(3) whether petitioner must report gambling winnings of $1,285 for taxable year 2006 (item 3, above);

(4) whether petitioner is allowed a deduction for medical and dental expenses of $22,699 for taxable year 2006 (as to which the net adjustment determined in the notice of deficiency was $20,636, item 4, above);

(5) whether petitioner is allowed a deduction for home mortgage interest of $3,790 for taxable year 2007 (item 5, above); and

(6) whether petitioner is allowed a deduction for "a loss due to rent not received due to non-payment by tenant" (item 7, above), which may be a reference to the deduction of $6,000 claimed for taxable year 2007 for other miscellaneous deductions.

**[\*7]** <u>Respondent's Amendment to Answer</u>

Respondent sought, and received from the Court, leave to file an amendment to answer that further answers the petition by alleging as follows:

> Even if Petitioner substantiates the deductions claimed for real estate rental activities for taxable years 2005 through 2008, any losses related to such activities would be limited pursuant to the passive activity loss rules set forth in I.R.C. § 469.

## FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts filed by the parties and the exhibits attached thereto are hereby incorporated in this opinion.

The principal adjustments to petitioner's returns for the years in issue involve the income and expenses reported on Schedules E for a rental property identified as "Single Family Home 18431 NW 24th Avenue" (property). The following is a summary of the Schedules E filed with petitioner's returns:

| [*8] | 2005 | 2006 | 2007 | 2008 |
|---|---|---|---|---|
| Income: | | | | |
| Rents received | $5,900 | $8,800 | $10,080 | $4,000 |
| | | | | |
| Expenses: | | | | |
| Insurance | 2,700 | 3,800 | 3,410 | -- |
| Mortgage interest paid | | | | |
| to banks, etc. | 21,000 | 21,800 | 20,400 | 17,100 |
| Repairs | 7,500 | -- | 3,800 | 4,300 |
| Taxes | 6,498 | 6,217 | 5,970 | 5,900 |
| | 37,698 | 31,817 | 33,580 | 27,300 |
| Depreciation expense | 3,400 | 3,400 | 3,400 | 3,400 |
| Total expenses | 41,098 | 35,217 | 36,980 | 30,700 |
| Income or (loss) from rental | | | | |
| real estate | -35,198 | -26,417 | -26,900 | -26,700 |
| Amount disallowed | 37,698 | 35,217 | 36,980 | 30,700 |
| Amount allowed | 3,400 | -- | -- | -- |

As shown above, respondent allowed a depreciation expense deduction of $3,400 for 2005 but disallowed all of the other expense deductions petitioner claimed on her Schedules E for the subject years. Respondent also determined that petitioner had failed to report rental income with respect to the property of $2,001 for 2007 and $2,757 for 2008.

Petitioner obtained an interest in the property by a quitclaim deed executed by an individual, Michael Bernard Diamond of the State of New Jersey, on or about September 30, 2005. The quitclaim deed transferred the real property at 18431 N.W. 24th Avenue, Carol City, Florida 33056, to the transferor, Mr.

**[*9]** Diamond, and to petitioner as joint tenants with rights of survivorship. The quitclaim deed was recorded on November 8, 2005.

Mr. Diamond had obtained the property from an individual, Sylvia M. Johnson, by quitclaim deed executed by Ms. Johnson on August 29, 1997. The parties have stipulated that Mr. Diamond "originally obtained an interest in the subject property, via inheritance". There is nothing in the record to suggest that Mr. Diamond gave any consideration for the property, or, if he did, the amount. Furthermore, the record does not reveal the value of the property on August 29, 1997, or September 30, 2005.

On May 31, 2005, before the execution of the quitclaim deed giving petitioner an interest in the property, Mr. Diamond executed a mortgage on the property securing "promissory notes of even date herewith" in the aggregate sum of $102,000 on behalf of the named mortgagees, Alan Taft and Sandra Taft, and David Lloyd and Frances Lloyd. Petitioner witnessed Mr. Diamond's signature on the mortgage, but she was not an obligee. The record does not contain the promissory notes secured by the mortgage, nor does it describe the terms of each of the loans, such as the amount of the note or the rate of interest.

On July 19, 2006, after the execution of the quitclaim deed giving petitioner an interest in the property, Mr. Diamond and petitioner executed a second

**[*10]** mortgage on the property securing a promissory note, dated on the same date, in the principal sum of $212,000 on behalf of the mortgagee, Fremont Investment & Loan. Mr. Diamond and petitioner are described in that mortgage as the "Borrower" and the mortgage is signed by Mr. Diamond and petitioner, but the signature block contains the warning: "There are non-obligated signer(s) who must execute this Document." Once again, the record does not contain a copy of the promissory note secured by the second mortgage.

The settlement statement for the second mortgage transaction on July 19, 2006, shows that after closing costs of $16,408.02 and certain other disbursements were made, Mr. and Mrs. Taft and Mr. and Mrs. Lloyd were paid $112,937.50, Mr. Diamond was paid $30,000, and the "Borrower" was paid $42,903.03 from the proceeds of the loan. The record does not disclose the nature of the payments to Mr. Diamond or to the "Borrower".

It appears that during the years in issue Mr. Diamond continued to own the property with petitioner as joint tenants with rights of survivorship, and he was liable as a borrower on the second mortgage dated July 19, 2006. Presumably, he was also liable under the related promissory note. Nevertheless, it also appears that petitioner reported all of the rental income from the property, and she

**[\*11]** deducted all of the expenses from the property on her income tax returns for the years in issue.

There is nothing in the record to explain Mr. Diamond's relationship to petitioner other than petitioner's comment at trial that "we were partners". The record does not contain anything, such as a partnership agreement, that describes the terms of the partnership or explains Mr. Diamond's involvement with the property. Furthermore, petitioner's tax returns for the years in issue make no mention of Mr. Diamond or of any partnership involving the property.

It is unknown what consideration, if any, petitioner gave to Mr. Diamond to purchase her interest in the property. As mentioned above, it appears that petitioner became a joint obligor with Mr. Diamond under a promissory note in the principal amount of $212,000 to Freemont Investment & Loan in July 2006, secured by a mortgage on the property. However, the promissory note is not a part of the record, and we have no way of knowing the amount of petitioner's liability for the promissory note. Furthermore, as mentioned above, we have no way of knowing the nature of the payment to the borrower of $42,903.03 that is shown on the settlement statement for the second mortgage or whether petitioner received all or some portion of that payment. Thus, petitioner has not established her basis in the property for depreciation purposes. See sec. 167(c).

[*12] We note that the Schedules E that petitioner filed with her returns for the years in issue claim depreciation of $3,400 per year with respect to the property. According to the depreciation schedules filed with her Schedules E for 2006 and 2007, she claimed $3,236 of depreciation on a single-family dwelling that had cost $89,000 and was placed in service on September 1, 1999. The depreciation schedules also show that she claimed $164 of depreciation on a heating unit that had cost $4,500 and was placed in service on October 12, 1999. Thus, in effect, the depreciation schedules claim that petitioner had purchased a single-family dwelling and a heating unit for a total of $93,500 and that she had placed those assets in service as a rental property in 1999. There is nothing in the record to reconcile this to the stipulation of facts, which states that petitioner did not acquire an interest in the property until September 30, 2005, at the earliest, when the quitclaim deed was executed by Mr. Diamond.

The Schedules E filed with petitioner's tax returns for 2005, 2006, 2007, and 2008 report that petitioner had received rents with respect to the use of the property of $5,900, $8,800, $10,080, and $4,000, respectively. The record does not identify the lessees of the property during 2005 or 2006. For the following two years, 2007 and 2008, the record shows that payments for use of the property were made to petitioner by the Miami-Dade Housing Choice Voucher Program.

**[*13]** For 2007 these payments totaled $11,361, or $1,281 more than the amount reported on petitioner's return.  For 2008, the payments totaled $6,757, or $2,757 more than the amount petitioner reported.

Petitioner's tax returns for 2005, 2006, 2007, and 2008 each claim that petitioner was a so-called real estate professional and that the losses reported from the property are "from rental real estate activities in which you materially participated under the passive activity loss rules".  See Schedule E, Part V, Summary.  The notices of deficiency disallow the expense deductions claimed on petitioner's Schedules E for failure to substantiate each of the expenses reported.  The notices of deficiency do not raise the passive activity loss rules as a basis to disallow the loss deductions claimed.  This issue was not raised until respondent's amendment to answer, as described above.

Petitioner's Prosecution of the Instant Case

This case was set for trial three times.  By notice setting case for trial issued to the parties on May 10, 2011, the case was first set for trial during the trial session of the Court beginning in Miami, Florida, on October 17, 2011.  That notice called the attention of the parties to the standing pretrial order issued in the case and to the requirement that the parties enter into a Stipulation of Facts to be submitted on October 17, 2011, if the case could not be settled, in which the

**[*14]** parties "**must agree in writing** to all facts and all documents about which there should be no disagreement." The notice also called the attention of the parties to the requirement that there be an "Exchange of Documents" in which "No later than October 3, 2011, [i.e., 14 days before the first day of the trial session] each party must provide to the other all the documents or materials that the party expects to offer into evidence at trial and that are not included in the stipulation."

These requirements are set out in the standing pretrial order that was issued to the parties on May 10, 2011. That order stated as follows:

<u>STANDING PRETRIAL ORDER</u>

The attached Notice Setting Case for Trial notifies the parties that this case is calendared for trial at the trial session beginning on Monday, October 17, 2011.

<u>Communication Between the Parties</u>. The parties shall begin discussing settlement and/or preparation of a stipulation of facts as soon as practicable. Valuation cases and reasonable compensation cases are generally susceptible of settlement, and the Court expects the parties to negotiate in good faith with this goal in mind. All minor issues should be settled so that the Court can focus on the issue(s) needing a Court decision. If a party has trouble communicating with another party or complying with this Order, the affected party should promptly advise the Court in writing, with a copy to each other party, or request a conference call for the parties and the trial Judge.

\*       \*       \*       \*       \*       \*       \*

[*15] To help the efficient disposition of all cases on the trial calendar:

     1.    Stipulation. It is ORDERED that all facts shall be stipulated (agreed upon in writing) to the maximum extent possible. All documents and written evidence shall be marked and stipulated in accordance with Rule 91(b), unless the evidence is to be used only to impeach (discredit) a witness. Either party may preserve objections by noting them in the stipulation. If a complete stipulation of facts is not ready for submission at the start of the trial or when otherwise ordered by the Court, and if the Court determines that this is due to lack of cooperation by either party, the Court may order sanctions against the uncooperative party.

     2.    Trial Exhibits. It is ORDERED that any documents or materials which a party expects to use (except solely for impeachment) if the case is tried, but which are not stipulated, shall be identified in writing and exchanged by the parties at least 14 days before the first day of the trial session. The Court may refuse to receive in evidence any document or material that is not so stipulated or exchanged, unless the parties have agreed otherwise or the Court so allows for good cause shown.

     3.    Pretrial Memoranda. It is ORDERED that, unless a basis of settlement (resolution of the issues) has been reached, each party shall prepare a Pretrial Memorandum containing the information in the attached form. Each party shall serve on the other party and file the Pretrial Memorandum not less than 14 days before the first day of the trial session.

During the proceedings respondent filed a motion to show cause why the proposed facts and evidence should not be accepted as established, hereinafter referred to as respondent's Rule 91(f) motion. Petitioner was given a copy of

**[*16]** respondent's Rule 91(f) motion, and she raised no objection to the facts recited therein.

Respondent's Rule 91(f) motion states that respondent sent so-called Branerton letters, see Branerton Corp. v. Commissioner, 61 T.C. 691 (1974), to petitioner on July 5, August 19, and September 2, 2011, explaining that the parties are required by Rule 91(a) to stipulate all relevant facts not in dispute. Those letters are not in the record, but we take note that it is the Commissioner's practice to schedule an informal conference with the taxpayer in every Tax Court case, as a prerequisite to formal discovery and as a prelude to stipulation, during which the parties can make a "voluntary exchange of necessary facts, documents, and other data * * * as an aid to the more expeditious trial of cases as well as for settlement purposes." See Branerton Corp. v. Commissioner, 61 T.C. at 692. According to respondent's Rule 91(f) motion, "petitioner failed to appear at the scheduled conferences, did not seek to reschedule, and did not send in the requested documents." Respondent's Rule 91(f) motion also states that petitioner failed to respond to a letter sent to her by respondent's attorney on October 3, 2011, reminding her of the stipulation requirement.

Petitioner did not file a pretrial memorandum before the October 17, 2011, calendar call, as required by the standing pretrial order. Respondent filed a

**[\*17]** pretrial memorandum, and in the section entitled "Evidentiary Problems" respondent notified petitioner and the Court as follows:

> Respondent will object to any attempt by Petitioner to introduce testimonial and documentary evidence on the ground of failure to comply with the Court's Standing Pretrial Order if the witness is not identified in a timely trial memorandum or the document was not timely exchanged.

Petitioner did not appear at the October 17, 2011, calendar call because five days beforehand she had filed a request for continuance that was granted by the Court without objection by respondent. In her request for continuance, petitioner, in effect, acknowledged her obligation to submit the documents necessary to substantiate the deductions claimed on her returns. Among other things, she advised respondent and the Court that she had recently hired a C.P.A. to help her get the documents necessary to "substantiate [her] expenditures, taxes, and medical expenses."

The Court's order granting petitioner's request for continuance set the case for trial during the trial session of the Court beginning on January 30, 2012. This was the second time the case was set for trial. The order also directed the Clerk of the Court to issue a second standing pretrial order to petitioner. That standing pretrial order contained the same provisions governing stipulation, trial exhibits, and pretrial memoranda as the previous standing pretrial order, quoted above.

**[\*18]** Finally, the order stated: "The Court will not be inclined to grant any further continuance in this case".

Respondent's Rule 91(f) motion states that respondent's attorney sent letters to petitioner on December 12, 2011, and January 13, 2012, before the second trial setting, again reminding petitioner of the stipulation requirement pursuant to Rule 91(a) and enclosing draft stipulations of fact for her review. According to respondent's motion, petitioner did not respond to these letters and she failed to send the documents that respondent had requested.

On January 11, 2012, respondent filed a pretrial memorandum as required by the second standing pretrial order. Petitioner did not file a pretrial memorandum. Significantly, respondent's pretrial memorandum again warned petitioner that respondent would object to the introduction of any documentary evidence that had not been timely exchanged.

Notwithstanding the order of October 12, 2011, in which the Court had stated that it would not be inclined to grant any further continuance, petitioner filed a request for continuance on January 18, 2012, less than two weeks before the calendar call. Among other things, petitioner's request for continuance states: "Through ARA I was given information in order to get subpoenas served to substantiate my expenses as it [sic] relates to attendant care, educational expenses,

[*19] medical expenses, etc. * * * I will have all the documents needed within two months." The Court denied petitioner's request for continuance on January 20, 2012.

Petitioner's case was called from the second trial calendar on January 30, 2012. Initially, petitioner did not appear and respondent made an oral motion to hold petitioner in default or to dismiss the case for failure to properly prosecute. In explaining the basis of the oral motion to the Court, respondent's counsel stated, among other things, that petitioner had not cooperated with the C.P.A. whom she had hired to help obtain the documents necessary to substantiate her deductions. Respondent's counsel stated as follows:

> MR. CLINE: * * * She indicated in her original motion [for continuance filed October 12, 2011] that she obtained an accountant to help her get her documents. My conversations with the accountant indicated that she had not been cooperating with him, had refused to answer his phone calls, and had not sent a single document to him.
>
> And then a week before this calendar, she filed another last-minute motion for continuance indicating that the accountant was not very helpful and she needed an attorney to help her get the documents, but that request for continuance was denied.

It turned out that petitioner was late in arriving for the calendar call on January 30, 2012. When she finally appeared, she stated the following to the Court, among other things:

**[*20]** Sir, I think I have everything for him [respondent's attorney] now * * *. I have documentation for him now. * * * I have some documents that I think would take care of most of this, would take care of, in fact, all of it, because I know I don't owe the Internal Revenue.

Indeed, according to respondent's Rule 91(f) motion, petitioner provided some documents to respondent's counsel after the calendar call on January 30, 2012, and respondent made a number of concessions that are based upon those documents and reflected in the stipulation of facts.

The Court set petitioner's case for trial on the following day, January 31, 2012. When the case was called at that time, however, petitioner did not appear "due to a claimed illness", according to the order of continuance that was issued by the Court on the same day. The Court's order of continuance struck the case and reset it for trial during the trial session of the Court beginning on February 13, 2012. This was the third time the case was set for trial. The order stated that the case had been continued twice and "petitioner is advised that the Court is inclined to not grant any further continuances." Finally, the order directed "that the Court's January 30, 2012, Miami, Florida Standing Pretrial Order, remains in full force and effect." This meant that the deadline for the exchange of documents remained January 16, 2012, and was not extended by the continuance.

**[*21]** According to respondent's Rule 91(f) motion, respondent sent a letter to petitioner on February 3, 2012, before the third calendar, again reminding petitioner of the stipulation requirement, pursuant to Rule 91(a), and enclosing a draft stipulation of facts for her review. Respondent's motion states that petitioner did not respond to that letter and she failed to send any documents to respondent.

When petitioner's case was called from the third calendar on February 13, 2012, petitioner did not appear. Respondent appeared and asked the Court to dismiss petitioner's case for failure to properly prosecute. Before entertaining respondent's motion, the Court set the case for recall the next morning, and the Court asked respondent's counsel to contact petitioner and notify her that the case would be recalled at that time.

Later during the calendar call on February 13, 2012, petitioner appeared before the Court. Once again, petitioner was late for the proceeding. During the discussion about the issues in the case that ensued, respondent provided the following summary of petitioner's failure to provide the documents necessary to substantiate the expenses claimed:

> MR. CLINE: She has not substantiated any of the expenses except for a few minor repair expenses that Respondent has conceded.

[*22] I will say that Ms. Gaitor failed to -- she provided some documents to exam. She failed to cooperate with appeals, and she failed to cooperate with me for the October calendar, for the January calendar.

She brought documents on Monday, January 30th of calendar call. I took those documents with me, considered them, made additional concessions, and sent Ms. Gaitor a proposed stip of facts to which she has not responded.

So Respondent has taken some of her documents and made considerations and concessions, but the bulk of the items are still at issue, and she has failed to substantiate them.

The Court set the case for a pretrial conference after the noon recess. When the case was called for the pretrial conference, however, petitioner did not appear. Respondent's attorney appeared and raised the fact that petitioner had failed to enter into a stipulation of facts. He represented that he had sent 11 stipulations of fact, and that petitioner had failed to communicate with him at all. When the Court asked whether respondent's counsel wanted to make a motion to compel stipulation under Rule 91(f), he answered as follows:

MR. CLINE: Yes. This case has been in exam since March of 2009. She [petitioner] failed to cooperate during that time. She failed to cooperate during appeals, and now three trial calendars she's failed to cooperate with me in stipulating. So yes, I would move at this time that the facts provided for in my proposed stip of facts be deemed admitted under Rule 91(f).

**[*23]** Subsequently, petitioner arrived and appeared before the Court at approximately 3 p.m., 1½ hours late for the pretrial conference that had been set for 1:30 p.m. The Court inquired about a stipulation of facts. Petitioner acknowledged that respondent had sent a stipulation to her, but she said that she had not signed it because she wanted to have an attorney look at it before she did.

There was also a discussion about the fact that petitioner had documents that she had not shown to respondent's counsel. That discussion ended with petitioner saying: "what I will try to do is go now, find a copier, copy them and give them to him [respondent's counsel]."

When the case was called for trial on the following day, the Court inquired about the stipulation of facts. Respondent's attorney stated that petitioner had informed him that she would not sign the stipulation of facts that they had discussed. For that reason, respondent's attorney asked the Court for leave to file respondent's Rule 91(f) motion describing respondent's unsuccessful attempts to obtain petitioner's cooperation. Petitioner appeared and filed a motion for recusal of Judge, which the Court denied.

After that, the Court explained to the parties that it was necessary to obtain "a complete Stipulation of Facts". The Court directed both parties to adjourn to a

[*24] conference room and negotiate a complete stipulation of facts. The Court stated that the trial would resume after that.

When the case was recalled, the parties submitted a "bare-bones" stipulation of facts in which they stipulated nothing more than the notices of deficiency, petitioner's tax returns, two quitclaim deeds relating to the subject rental property, one concession by petitioner, and a number of concessions by respondent.

The Court asked whether there were other documents to be included in the record. Respondent's counsel stated that respondent had three or four other documents that had previously been provided to petitioner. Petitioner stated that she had "probably 100 documents" that had never been provided to respondent.

The Court noted the fact that the standing pretrial order required all unstipulated documents to be exchanged at least 14 days before the first day of the calendar call and ruled that both parties would be held to that requirement. In passing, we note that this ruling had the effect of extending the deadline for the exchange of documents from January 16, 2012, to January 30, 2012. Respondent did not object to the Court's ruling.

After petitioner's testimony finally got under way, she sought the introduction of eight documents one after the other. Respondent objected to a number of those documents on the ground that petitioner had not submitted the

[*25] document in accordance with the 14-day rule of the standing pretrial order.

When the issue arose, the Court stated as follows:

> I made a ruling, and I don't want to just throw it out the window. Counsel has said that he has not seen this document, and I'm not prepared right now to overrule that in this one case. I want to see what your [petitioner's] case is * * *. I'm going to put this document aside, and we'll look at the record and make a final ruling at the end of the proceeding. Go ahead. Let's see your next -- [document].

As petitioner's testimony proceeded, it became readily apparent that, because of petitioner's failure to exchange her documents with respondent as required by the standing pretrial order, it would take an enormous amount of time for all of petitioner's 100 or so documents to be marked for identification, described, objected to, and ruled upon. The Court stated as follows:

> THE COURT: Well, this is not going to work. We can't sit here and have this kind of discussion with respect to each document. Respondent has a legitimate objection with respect to probably most of your pile, Ms. Gaitor, and the reason for that is you can't wait, with the history of this case, delaying and kind of not being available, and then all of a sudden swoop into Court with four or 500 pages of documents and expect Respondent to say, okay, I agree with all of that.
>
> THE WITNESS: Sir --
>
> THE COURT: Now, for the --
>
> THE WITNESS: may I say something here?

[*26] THE COURT:  the Court shouldn't put one of the parties in that position.  Now, I'm sensitive to that.  At the same time, I want to be fair to you.  If you have legitimate expenses, I'd like to see you get your deduction.  But we're not going to get there doing this.

The only way that I see that we're going to get anywhere is if you two sit down and work up a list of what this stuff is so that we can have a proceeding where we're not passing documents back and forth.  We have the numbers assigned.  We have the documents available.

I will take Respondent's objection very seriously.  So I'm not saying that this is going to get all of these documents into evidence, but I want to see what your case is.  I want to understand what you're talking about, and I can't do that with you fumbling around taking five or ten minutes just to hand up a document for $324.  I mean, that's just not going to work.

THE WITNESS:  Well, Your Honor, I'm sorry that I am so slow with it, but as I --

THE COURT:  No.  I'm talking about any -- this isn't any criticism on anybody.  The process is slow.

THE WITNESS:  Yeah, the problem --

THE COURT:  And you have created a situation where, by not presenting these documents earlier in a way that would have allowed Respondent to look at them in a timely way and evaluate them, you've created a situation where you're putting the Court in the position of trying to either -- being unfair to Respondent and [not] shutting you off or trying to do something for you and trampling Respondent.  Now, I don't want to do either one of those things.

THE WITNESS:  Sir --

**[\*27]** THE COURT:  So here's what I want to do.  I think you all have to sit down and work up a list of this stuff.  I want to hear your testimony and I want to see what these documents are.  I'm not pre-judging this in any way, and I want to understand what this case is about.  I can't understand it right now.

    *        *        *        *        *        *        *

THE COURT:  -- here's what I want you to do.  I want you sit down and work up a list.

Counsel, I'm really imposing on you, and I understand and I'm sorry for that, but that's the situation we're in.

The Court directed petitioner to give to respondent's attorney the documents she wanted in the record--she had still not done so, and would not do so until 9:30 a.m. on the following day--and directed respondent's attorney to prepare a list of all of the documents for which petitioner sought admission into the record, with exhibit numbers and an indication of respondent's objections, if any.  The Court further directed that the case be recalled two days later at 1 p.m.  Petitioner asked that the case be recalled at 2:30 p.m., rather than at 1 p.m.  At that point, the Court recessed the trial.

Two days later, on February 16, 2012, petitioner did not appear at 2:30 p.m., the time she had requested.  Petitioner did not appear until 3:40 p.m., approximately 70 minutes later.  Petitioner's late arrival made it unlikely that the trial of the case could be completed without further recessing the case overnight.

[*28] When the case was called, the Court noted on the record: "we've called this case four times during this trial session, and at every one of those times petitioner was late". The Court then reviewed the fact that, from the first, petitioner was well aware of the need to obtain the documents necessary to substantiate the deductions that were at issue. The Court noted that petitioner's request for continuance filed October 12, 2011, stated as follows:

> Also, I recently hired a CPA who will help me get all the documents and serve subpoenas on Bank of America in order to get checks that will substantiate my expenditures, taxes, and medical expenses.

The Court also noted that the standing pretrial orders that were issued to the parties on May 10, 2011, when the case was set for trial on October 17, 2011, and on October 12, 2011, when the case was set for trial on January 30, 2012, both directed the parties to identify in writing and exchange any documents and materials which are not stipulated "at least 14 days before the first day of the trial session." The Court further noted that both standing pretrial orders state: "The Court may refuse to receive in evidence any document or material that is not so stipulated or exchanged, unless the parties have agreed otherwise or the Court so allows for good cause shown."

**[\*29]** After reviewing that background, the Court stated,

> I am going to enforce that provision [the 14-day rule] in this case, and any document or material that was not presented to Mr. Cline or government counsel prior to January - I think it's January the 30th, 2012 will not be accepted in this proceeding.

Thereupon, the Court reviewed the list of the documents and materials for which petitioner sought admission. The Court made specific rulings on which documents were included in, and which documents were excluded from, the record on the basis of respondent's objections. The Court then gave petitioner an opportunity to present her case.

After that, petitioner accused the Court of "not making any attempt to be fair to [her]" and she raised her voice until she was yelling. The Court granted petitioner's request for a brief recess. When the case was recalled, petitioner submitted a second typewritten motion for recusal of Judge.

After the Court denied petitioner's motion, she again began shouting, and she approached the bench in a manner that caused the United States Marshals to move to block her path. Whereupon, even though the trial was ongoing, petitioner packed her things and left the courtroom.

**[\*30]**                                 OPINION

<u>Petitioner's Violation of the 14-Day Rule of the Standing Pretrial Order</u>

The trial of this case was held during the trial session that began in Miami, Florida, on February 13, 2012, after it had been continued from two prior trial sessions. Petitioner had been given more than enough time, approximately nine months, while the case was pending on those prior sessions to obtain the documents and materials necessary to substantiate the deductions at issue and exchange them with respondent's attorney at least 14 days before the first day of the trial sessions, as required by the standing pretrial orders. Nevertheless, at trial petitioner sought the admission into evidence of approximately 100 documents that she had not previously provided to respondent.

Respondent's attorney had forewarned petitioner in two pretrial memoranda, one dated September 28, 2011, and the other January 11, 2012, that he would object to the introduction of any document that was not exchanged in conformity with the 14-day rule, and he made timely objection to such documents at trial.

Initially, at the start of petitioner's testimony, the Court resisted sustaining respondent's objection to the admission of petitioner's documents on the basis of a violation of the so-called 14-day rule. The Court explained to the parties:

**[*31]** Counsel has said that he has not seen this document, and I'm not prepared right now to overrule that in this one case. I want to see what your [petitioner's] case is * * *. I'm going to put this document aside, and we'll look at the record and make a final ruling at the end of the proceeding. Go ahead. Let's see your next -- [document].

&ast;       &ast;       &ast;       &ast;       &ast;       &ast;       &ast;

I want to be fair to you [i.e., petitioner]. If you have legitimate expenses, I'd like to see you get your deduction.

After making the above statement, it became clear to the Court from a review of the record over the ensuing days that petitioner had deliberately failed to exchange documents with respondent's counsel and had deliberately failed or refused to cooperate with respondent's counsel in the preparation of her case for trial on three successive trial calendars. It also became clear that respondent would be prejudiced by petitioner's conduct. As a result, the Court announced that it would sustain respondent's objection to the introduction of any documents that had not been exchanged 14 days before the first day of the trial session.

The Court took such action pursuant to Rule 131(b), which provides that failure to comply with a standing pretrial order may subject a party to sanctions which may include the exclusion of evidence offered in violation of the 14-day rule. See Rules 104(c)(2), 123(b); Griffin v. Commissioner, T.C. Memo. 2010-252; Coppin v. Commissioner, T.C. Memo. 2009-221, slip op. at 3; Kanofsky v.

[*32] Commissioner, T.C. Memo. 2006-79, aff'd, 271 Fed. Appx. 146 (3d Cir. 2008); Fairey v. Commissioner, T.C. Memo. 2005-129, slip op. at 22 n.6; Schaefer v. Commissioner, T.C. Memo. 1998-163, aff'd without published opinion, 188 F.3d 514 (9th Cir. 1999). In Moretti v. Commissioner, 77 F.3d 637, 644 (2d Cir. 1996) the Court of Appeals affirmed a ruling by the Tax Court excluding from evidence a category of documents that pro se taxpayers had not produced at least 15 days before the first day of the trial, as required by a pretrial order, similar to the standing pretrial orders in the instant case. According to the Court of Appeals, "the Tax Court acted within its discretion in excluding the documents." Id.; see also Dumanis v. Commissioner, 182 F.3d 899 (2d Cir. 1999) (affirming the exclusion of documents that taxpayers, pro se litigants, had failed to exchange "at least 15 days before the first day of the trial session" in derogation of Tax Court's pretrial order.)

In sustaining respondent's objection in this case, the Court took into account the fact that petitioner had been given ample notice of the requirement that the parties identify in writing and exchange, not less than 14 days before the first day of the trial session, any unstipulated documents or materials that they expected to use at trial. Petitioner also had been given ample warning that the Court might refuse to receive in evidence any document or material that was not

[*33] stipulated or so exchanged. These matters were spelled out in the notice setting case for trial sent to petitioner on May 10, 2011, the standing pretrial order, also sent to her on May 10, 2011, and the standing pretrial order dated August 25, 2011, that was sent to petitioner as an attachment to the Court's order dated October 12, 2011. Petitioner was also warned in respondent's pretrial memoranda filed on September 28, 2011, before the first trial calendar, and on January 11, 2012, before the second trial calendar, that respondent would object to the introduction of any documentary evidence if the document had not been timely exchanged.

In sustaining respondent's objection, the Court also took into account the fact that petitioner had failed or refused to cooperate with respondent's attorney in preparing this case for trial during each of the three trial sessions on which it had been set. In fact, as described above, respondent's attorney had sent petitioner 11 proposed stipulations of fact without receiving a response from petitioner, and petitioner did not enter into a stipulation of facts until the Court recessed the trial and directed that the trial would resume after the parties had entered into a stipulation.

In sustaining respondent's objection, the Court took into consideration the fact that many of the documents that petitioner had not exchanged with respondent

**[\*34]** appeared to have been altered after they were originally written, such as checks or invoices with altered dates or checks with memos added in different ink. Furthermore, a number of the documents had no apparent relevance to the issues in the case, such as checks to a church in a year for which no adjustment had been made to the charitable deductions claimed, or checks for medical expenses in a year for which no adjustment had been made.

Finally, the Court took into consideration petitioner's disdainful and contemptuous attitude toward the Court. Petitioner was late--without apology or explanation--every time her case was called by the Court. She was hostile and abusive to the Court staff. Finally, petitioner had to be admonished that it is customary to stand when her case was called.

Default and Failure To Properly Prosecute or Comply With the Rules or Orders of the Court

As described above, shortly after the Court's ruling petitioner packed her belongings and left the Court. Petitioner's conduct, leaving the courtroom while her trial was in progress, raises the question whether we should declare petitioner in default and enter judgment for respondent, pursuant to Rule 123(a). See, e.g., Ritchie v. Commissioner, 72 T.C. 126 (1979) (failure to appear at trial).

[*35] Similarly, petitioner's failure to stipulate all unprivileged facts "to the fullest extent to which complete or qualified agreement can or fairly should be reached", as required by Rule 91(a), and petitioner's failure to communicate with respondent's attorney and to cooperate in the preparation of her case for trial, as required by the standing pretrial order, raise the question whether we should dismiss this case, pursuant to Rule 123(b), for failure to properly prosecute or to comply with the Rules and orders of the Court. See, e.g., Branson v. Commissioner, T.C. Memo. 2012-124.

We choose to decide this case on the merits, rather than declare petitioner in default or dismiss the case for failure to properly prosecute or to comply with the Rules and orders of the Court. See Comey v. Commissioner, T.C. Memo. 2001-275, slip op. at 2; Furniss v. Commissioner, T.C. Memo. 2001-137, slip op. at 3 n.4. We do so in order to take into account certain concessions, principally respondent's concessions in petitioner's favor, that are set forth in the stipulation of facts.

Issues for Decision

This case involves plain vanilla substantiation issues, including whether petitioner is allowed a deduction for 2006 for medical and dental expenses of $22,699, whether she is allowed a deduction for 2007 for home mortgage interest

**[\*36]** of $3,790, and whether she is allowed deductions for all of the subject years for the expenses reported on Schedules E, allegedly due to a rental real estate business, of $37,698, $35,217, $36,980, and $30,700, respectively. It also involves the substantiation of a loss petitioner described as "a loss due to rent not received due to non-payment by tenant". This vague statement in the petition may be a reference to a miscellaneous deduction of $6,000 claimed on petitioner's return for 2007 that was disallowed. Finally, the case involves two income issues: first, whether the rent realized by petitioner from the alleged rental business was understated by $2,001 and $2,757 for 2006 and 2007, respectively, and, second, whether petitioner must report gambling winnings of $1,285 for 2006.

These are the only issues that petitioner raised in the assignments of error in her petition. Pursuant to Rule 34(b)(4), any issues that she did not raise in her assignments of error are deemed waived. See, e.g., Funk v. Commissioner, 123 T.C. 213, 215 (2004).

We note parenthetically that the fact that petitioner is a pro se litigant does not excuse her from the obligation to comply with the Court's Rules. See, e.g., Taylor v. Commissioner, 771 F.2d 478, 480 (11th Cir. 1985).

**[\*37]** Before addressing each of the six issues raised in the petition, we must first address the burdens of proof applicable to this case.

Burden of Proof--Deductions

Generally, taxpayers bear the burden of proving, by a preponderance of the evidence, that the determinations of the Commissioner in a notice of deficiency are incorrect. Rule 142(a). Deductions are a matter of legislative grace, and taxpayers bear the burden of proving entitlement to any claimed deductions. Rule 142(a)(1); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). See generally Rockwell v. Commissioner, 512 F.2d 882 (9th Cir. 1975), aff'g T.C. Memo. 1972-133. An exception to this general rule is found in section 7491(a), which places the burden of proof on the Commissioner if the taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining her liability, has complied with the substantiation requirements, has maintained all records required, and has cooperated with reasonable requests for witnesses, information, documents, meetings, and interviews. Petitioner has done none of those things. As a result, the burden of proof with respect to the deductions claimed on the subject returns remains with petitioner.

[*38]  Burden of Proof--Unreported Income

When a case involves unreported income and is appealable to the U.S. Court of Appeals for the Eleventh Circuit, as this case appears to be, absent a stipulation to the contrary, see sec. 7482(b)(1)(A), the Commissioner's determination of unreported income is entitled to a presumption of correctness only if the determination is supported by a minimal evidentiary foundation linking the taxpayer to an income-producing activity, see Blohm v. Commissioner, 994 F.2d 1542 (11th Cir. 1993), aff'g T.C. Memo. 1991-636.  Once the Commissioner produces evidence linking the taxpayer to an income-producing activity, the burden shifts to the taxpayer to rebut the presumption by establishing that the Commissioner's determination is arbitrary or erroneous.  Id.  See generally United States v. Janis, 428 U.S. 433 (1976).

We find that respondent's introduction of the records of payments to petitioner for 2007 and 2008 by the Miami-Dade Housing Choice Voucher Program, which are hereby taken into the record of this case, establish the minimal evidentiary foundation linking petitioner with the rental payments made by the Miami-Dade Housing Choice Voucher Program during 2007 and 2008.  See Blohm v. Commissioner, 994 F.2d at 1549.  Accordingly, respondent's determination is presumed correct, and petitioner bears the burden to rebut the

[*39] presumption by establishing that respondent's determination is arbitrary or erroneous. See id.

Burden of Proof--Respondent's Amendment to Answer

The notices of deficiency determine that petitioner is not allowed to deduct the expenses reported on the Schedules E filed with her returns for the years in issue, for failure to substantiate the expenses. As mentioned above, respondent's amendment to answer alleges that even if some deductions claimed on Schedule E are substantiated, any losses related to petitioner's real estate rental activities would be limited pursuant to the passive activity loss rules set forth in section 469. Because respondent first asserted the passive loss argument in his amendment to answer, respondent bears the burden of proof on this issue. See Rule 142(a); Tarakci v. Commissioner, T.C. Memo. 2000-358. On the basis of our review of the record, we find that respondent has not established that any losses in this case are limited under section 469.

Burden of Proof--Additions to Tax and Penalties

With respect to additions to tax and penalties, section 7491(c) ordinarily imposes the burden of production on the Commissioner. However, petitioner made no assignment of error as to the additions to tax under section 6651(a)(1) or the penalties under section 6662(a) that were determined in the notices of

**[\*40]** deficiency.  Petitioner is deemed to have conceded those items.  See Rule

34(b)(4).  Accordingly, respondent incurs no obligation to produce evidence in

support of those determinations, pursuant to section 7491(c).  See Funk v.

Commissioner, 123 T.C. at 218; Swain v. Commissioner, 118 T.C. 358 (2002).

<u>Issues 1 and 2:  Disallowance of Expenses for a Rental Activity Reported on
Schedule E and Increase of the Income From Such Activity</u>

Respondent conceded in the stipulation of facts and at trial that petitioner is

entitled to deductions on Schedule E as follows:

| Respondent's Concessions | 2005 | 2006 | 2007 | 2008 |
|---|---|---|---|---|
| Schedule E--repairs | $90.95 | -- | -- | -- |
| Schedule E--repairs | 51.00 | -- | -- | -- |
| Schedule E--repairs | 29.96 | -- | -- | -- |
| Schedule E--repairs | 454.58 | -- | -- | -- |
| Schedule E--repairs | 83.36 | -- | -- | -- |
| Schedule E--real estate taxes | -- | $4,151.45 | -- | -- |
| Schedule E--insurance | -- | 3,053.00 | -- | -- |
| Depreciation expense | 3,400.00 | 3,400.00 | $3,400 | $3,400 |
| Total | 4,109.85 | 10,604.45 | 3,400 | 3,400 |

On the basis of our review of the record, we find that the above deductions,

conceded by respondent, are the only Schedule E deductions to which petitioner is

entitled for the years in issue.  Petitioner has failed to prove that she is entitled to

any other deductions claimed on her Schedules E.

**[*41]** Furthermore, we find that the records of the Miami-Dade Housing Choice Voucher Program establish that rental payments were made to petitioner amounting to $11,361 in 2007 and $6,757 in 2008. Accordingly, the rental income petitioner reported on her Schedules E was understated by $1,281 (i.e., $11,361 less $10,080) for 2007 and by $2,757 (i.e., $6,757 less $4,000) for 2008. We note that the understatement of income for 2007, $1,281, is $720 less than the understatement determined in the notice of deficiency, i.e., $2,001.

Issue 3: Gambling Winnings of $1,285 for 2006

In the stipulation of facts, petitioner concedes that she had failed to report gambling winnings of $1,285 for taxable year 2006, and respondent concedes that petitioner is entitled to an itemized deduction for gambling losses pursuant to section 165(d) of $1,285 for taxable year 2006.

Issue 4: Net Medical and Dental Expenses of $20,636 for 2006

For taxable year 2006 respondent disallowed the deduction of net medical and dental expenses of $20,636 for lack of substantiation. According to the stipulation of facts, respondent now concedes that petitioner is entitled to an itemized deduction for medical expenses with respect to the following payments:

| [*42] Date | Payee | Amount |
|------------|-------|--------|
| June 8, 2006 | Surgical World | $350 |
| Mar. 8, 2006 | Hazel Mitchell | 450 |
| Mar. 22, 2006 | Hazel Mitchell | 900 |
| May 8, 2006 | Lois Wilson | 100 |
| June 24, 2006 | Gwendolyn Taylor | 1,000 |
| June 24, 2006 | Gwendolyn Taylor | 700 |
| Oct. 1, 2006 | Danielle Gibson | 300 |
| Total | | 3,800 |

On the basis of our review of the record in this case, we find that the above deductions conceded by respondent are the only deductions for medical and dental expenses to which petitioner is entitled for taxable year 2006.

Issue 5:  Home Mortgage Interest of $3,790 for 2007

On the basis of our review of the record, we find that petitioner has not substantiated that she is entitled to a deduction for home mortgage interest for taxable year 2007 of $3,790.

Issue 6:  Loss Due to Nonpayment of Rent

As mentioned above, item 7 of the petition refers to "a loss due to rent not received due to non-payment by tenant." It appears that petitioner is claiming a loss deduction under section 165(a) for rent that a tenant failed to pay. This is the only mention of this matter in these proceedings.

**[*43]** Petitioner has not shown that she is entitled to a loss deduction under section 165(a). As the U.S. Supreme Court held in a case dealing with the predecessor of section 165, nothing in that section "indicates that Congress intended to allow * * * [the taxpayer] to reduce ordinary income actually received and reported by the amount of income he failed to realize." Hort v. Commissioner, 313 U.S. 28, 32-33 (1941). In any event, in addition to the foregoing, we find that petitioner has not substantiated her entitlement to a deduction for any taxable year for "a loss due to rent not received due to non-payment by tenant."

Other Matters

Respondent concedes that, for taxable year 2008, petitioner is entitled to a deduction from adjusted gross income for student loan interest of $663.78. Petitioner did not raise this issue in the petition. Nevertheless, we accept respondent's concession and hereby find that petitioner is entitled to such a deduction.

Finally, we note, as mentioned above, that petitioner raised no issue in her petition as to, and thus conceded, respondent's determination of her liability for additions to tax under section 6651(a)(1) for taxable years 2005 through 2007 and

**[*44]** her liability for the accuracy-related penalty under section 6662(a) for taxable years 2005 through 2008.

In order to give effect to the concessions of the parties,

<u>Decision will be entered</u>

<u>under Rule 155</u>.